By the court.
There is no doubt, but if in equity and good conscience, this bond ought not to be paid, the verdict ought to be for the defendants. On the other hand, if no good or legal objection can be made against it, the welfare of society requires it should be enforced as a fair contract.
It is also clear, that no solid argument against the discharge of the bond can be founded on the sheriff’s sale under the mortgage. Hannum accepted the deed, subject to the mortgage, and agreed to take it on himself, and free the other two tracts comprised therein from that incumbrance. He ought therefore to have paid it under the terms of his own contract, and he shall not now be permitted to shelter himself under his own defatilt. Had he complied with his agreement, the Indian Fields tract could never have been sold under the levari facias, but with his consent. It has been said that he was not obliged to purchase at the sheriff’s sale for his own protection. It would have been fortunate if either he or the executors had taken this step; it would have prevented a great waste of property. The difference of the price stipulated to be paid by him, and the sum it afterwards sold for, was no less than 808I. 4s. 4^jd. exclusive of interest on the original sum for near four years and nine months.
But the defendant’s counsel rest on a legal objection against the plaintiff’s recovery, and contend that the executors could not make a sufficient deed, freed from the creditors and legatees of Nathaniel and Elizabeth Ring. The point agitated before us is new, so far as we know, and we should have been well pleased to have avoided with propriety the giving of our *386 opinion without more full reflection. But it is absolutely necessary that our present sentiments should be made known, in order to obtain a verdict. We consider the point as reserved for future discussion, in case the verdict shall be for the plaintiff.
*3871 *The defendants ground the liability of these lands to pay the debts and legacies of Nathaniel and Elizabeth Ring, on the peculiar laws and customs of this government.
The first act which occurs respecting the present question, ■ is among the laws agreed on in England in 1682, § 14, (Append, to Prov. Laws, edit. 1775, pa. 4,) which directs ‘'that all lands and goods shall be liable to pay debts, except “where there is legal issue, and then all the goods and one “third of the land only.”
Then another act, cap. 51, (Append, pa. 7,) which in the case of issue, renders one half of the land liable to debts, “provided the land was bought before the debts were con“tracted.”
Then the act, cap. 119, (Append, pa. 9,) directs how the estate of any person shall be disposed of, “his debts being “first paid.”
Next follows the act of 1688, cap. 189, (Append, pa. 10,) which provides ‘ ‘ that all lands whatsoever and houses shall “be liable to sale upon judgment and execution, against the “defendant, his heirs, executors or administrators,” but this act was limited in its duration to one year, and until 20 days after the rising of the next general assembly. This law was continued under the administration of governor Fletcher, in 1693, (Append, pa. 12,) and was afterwards re-enacted in 1694, in the same words as a perpetual act.
Then succeeded the act of 12 Will. 3, in 1700, (Prov. Laws, pa. 6,) which is still in force, and is penned in the same terms with the additional words, “where no sufficient personal es“tate is to be found. ” And then came the act of 1705. (Ib. 49.)
Upon the best consideration we have been able to give on the sudden, of the case before us, we do not conceive, that the legislature, in the different laws we have enumerated, ever intended to go further, than to make lands assets for the payment of debts, upon a deficiency of personal property, in the same manner that mere goods and chattels were before assets at law in the cases of deceased persons. Under our idea, lands were not pledged or mortgaged for the debts of a testator or intestate: they were not more pointedly made chargeable or liable for such debts, than personal estate was previously thereto, nor could such debts be properly considered as liens thereon. If a sheriff sells the lands of a testator or intestate in a due course of law, he must pay the balance after deducting the debts and costs to the executor or administrator of such deceased: should they squander the money, *387 it will not be pretended that other creditors can look again to the lands. So, where an administrator sells lands in pursuance of an order of Orphans’ Court, but embezzles the * money, and afterwards becomes insolvent, the credi- r*ooo tors cannot take the lands thus sold in execution. An L honest sale by executors under proper authority, is equally valid and legal; and why should not the same consequences follow, though the executors should afterwards misapply the money paid to them? What sound principle of policy or reason can be shewn, discriminating between a bona fide sale of real estate by executors duly empowered, and a sale of personal estate by them, or by administrators, in the common course of administration ? Vide Barnard. Cha. Ca. 78.
Reversed 011 writ of error in 1 Yeates, 553, S. C., 2 Dali., 291.
Referred to 10 Pa., 268.
Messrs. Ingersoll and Wilcocks, pro quer.
Messrs. Tilghman, J. B. M’Kean and J. Ross, pro def.
[A bill of exceptions was drawn up by counsel, and signed by the chief justice, and a writ of error was afterwards brought on the judgment on this verdict, returnable to the High Court of Errors and Appeals, and the judgment was afterwards reversed 16th September 1795, on a different ground from that taken at the trial.]
Nevertheless, the question is a new one in this state. Neither the case of Graff v. Smith’s administrators, or Morris’s lessee v. Smith, decides the point; wherefore, the defendants shall have an opportunity of bringing the matter of law before the whole court in bank, that a question of so much magnitude may be finally settled.
[At the instance of the defendants’ counsel it was then agreed, that a bill of exceptions should be taken, and that the point reserved should form part of the record, that either party might in the dernier resort, carry it up to the High Court of Errors and Appeals, if they should think proper so to do.]
Verdict for the plaintiff for 735I. 2s. 6d. costs.