# Herbert A. Taylor, by His Guardian, Menno M. Fry, Appellant, *v.* William Haskell and H. M. Stauffer, Surviving Partners of Haskell, Tripple & Co., and Samuel Brady.

*Wills—Executors and administrators—Purchase of land by executor at his own sale.*

An executor who buys at his own sale, or gets another to buy for him, holds the land on the same trust that it was subject to before the sale.

*Wills—Conversion of land into money—Power of sale.*

To establish a conversion of land into money under a will the sale must be absolutely directed, irrespective of contingencies, and independent of discretion.

*Wills—Power of sale—Conversion—Purchase by executor at his own sale.*

A married woman owned a gristmill which her husband operated and managed. By her will she made specific bequest of her personal property. She disposed of the mill property which was incumbered by a mortgage, as follows: " The balance of my property to remain as it is under the care of my husband, he to carry on his business the same as if I was here, and to reap all benefits so long as he lives, my husband to have power to sell it at any time, and when sold and all debts of property paid, he to receive $2,000 of my money and balance to be put on interest under his care for my son Herbert. This is my will and to be carried out by my husband." Two years and seven months after the death of testatrix the husband took out letters testamentary, and subsequently sold the mill property at auction to one who bought for the husband, and then con-

veyed to him. He did not pay his wife's debt secured by the mortgage, nor put out the balance, after deducting the $2,000, for her son. After . the husband's death his administrators procured an order of the orphans' court and sold the property to the defendants. The defendants went into possession, but on account of uncertainty of the title declined to accept a deed, or pay any part of the purchase money. Subsequently, the guardian of the son brought an ejectment against them. *Held*, (1) that there was no conversion of the land into money by the will; (2) that the sale was a sale to the husband and vested no title in him; (3) that the guardian was entitled to recover.

Argued May 22, 1896. Appeal, No. 384, Jan. T., 1896, by plaintiff, from judgment of C. P. Lancaster Co., Sept. T., 1895, No. 6, on verdict for defendants. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Ejectment for a tract of land in Manor township. Before LIVINGSTON, P. J.

The facts appear by the opinion of the Supreme Court.

The court below gave binding instructions for defendants.

Verdict and judgment for defendants. Plaintiff appealed.

*Error assigned* was above instruction.

*John H. Fry* and *A. F. Hostetter*, for appellant.—The rule is well settled that persons who act in a fiduciary capacity cannot become purchasers at their own sale against the dissent of their cestui que trust: Hill on Trustees, 536; Lewin on Trustees, 460; Chronister v. Bushey, 7 W. & S. 153; Painter v. Henderson, 7 Pa. 49; Beeson v. Beeson, 9 Pa. 284; Musselman v. Eshleman, 10 Pa. 395; Leisenring v. Black, 5 Watts, 303; Pennock's App., 14 Pa. 447; Drysdale's App., 14 Pa. 531; Chorpenning's App., 32 Pa. 315; Campbell v. McLain, 51 Pa. 201; Grim's App., 105 Pa. 377; Shuman's App., 27 Pa. 64.

While equitable conversion operates to take the title of real estate from the heirs and vest it in the executors for the purposes of sale, the law wisely holds that such a serious consequence cannot be effected by implication: Bleight v. Bank, 10 Pa. 131; Hunt & Lehman's App., 105 Pa. 141; Irwin v. Patchen, 164 Pa. 65; Cobel v. Cobel, 8 Pa. 342; Peterson's App., 88 Pa. 397; Hunt's App., 105 Pa. 128; Chew v. Nicklin, 45 Pa. 88.

*W. U. Hensel, J. Hay Brown,* with them, *J. W. Denlinger,* and *Wm. Aug. Atlee,* for appellees.—An absolute direction to sell lands after the death of the testator and to divide the proceeds among his children effects an equitable conversion thereof into personalty: Page's Est., 75 Pa. 87; Hunt & Lehman's App., 105 Pa. 128; Marshall's Est., 147 Pa. 77; Allison v. Wilson, 13 S. & R. 330: Morrow v. Brenizer, 2 Rawle, 185; Burr v. Sim, 1 Whart. 252; Allison v. Kurtz, 2 Watts, 185; Gray v. Smith, 3 Watts, 289; Simpson v. Kelso, 8 Watts, 247; Hess v. Shorb, 7 Pa. 231; Willing v. Peters, 7 Pa. 287; Silverthorn v. McKinster, 12 Pa. 67; Parkinson's Appeal, 32 Pa. 455; Wilson v. Shoenberger, 34 Pa. 121; Brolasky v. Gally's Executors, 51 Pa. 509; Evans's Appeal, 63 Pa. 183 · McClure's Appeal, 72 Pa. 414; Jones v. Caldwell, 97 Pa. 42.

OPINION BY MR. JUSTICE DEAN, October 5, 1896:

Percie A. Taylor, a married woman, died in February, 1880, leaving her husband, George A. Taylor, and an infant son, this plaintiff, to survive her. She was owner at her death of twenty-three acres of improved land, on which was a gristmill. Her husband, at her death, was operating the mill and managing the property. There was no other property, except her clothing and some personal jewelry. She left a will in which, after bequeathing her small quantity of personal property to her husband, son and near friends, she thus disposed of her real estate:

" The balance of my property to remain as it is under the care of my husband, he to carry on his business the same as if I was here, and to reap all benefits so long as he lives, my husband to have power to sell it at any time, and when sold and all debts on property paid, he to receive $2,000 of my money and balance to be put on interest under his care for my son Herbert. This is my will and to be carried out by my husband."

The will was duly proved October 9, 1882, and letters testamentary issued to the husband, who on October 26 following, sold the property at public sale to Urias K. Goodman for $10,500. This sale, it is undisputed, was merely colorable, the purchase · being for the husband and executor, who had instructed the auctioner to knock the property down to Goodman; as, no matter what it brought, he wanted it for himself. Taylor, then, as executor, on April 1, 1883, executed to Goodman

a deed, who on same day, for same consideration, $10,500, reconveyed to Taylor, and both deeds were recorded same day. So far as appears no purchase money passed between them. Taylor continued in possession of the property as before up until his death in August, 1893; he filed no account either as executor of the will or as trustee for the son. After the death of the father, his administrators, assuming the title to be in him, under an order of the orphans' court, sold the property at public sale to these defendants at a bid of $9,000, which sale was confirmed September 17, 1894. The purchasers went into possession, and have so remained since, but on account of doubts being cast on the title by the claim of the son, they declined to accept a deed, or pay any part of the purchase money. On July 6, 1895, the guardian of the son brought this ejectment. At the trial in the court below, the learned judge being of opinion there was a conversion of the land into money by the will, and therefore that Taylor, the husband, notwithstanding the sale to himself, had a good title to the property, directed the jury to find for defendants, and we have this appeal by plaintiff, assigning as error the instruction of the court.

If the defendants, on the faith of a judicial sale under the order of the orphans' court for payment of debts, had, after confirmation, accepted the administrator's deed and paid their purchase money, it is possible quite a different question would have been presented than the one now before us; but they do not stand in the attitude of innocent purchasers who, without notice, have paid their purchase money; nor even in the attitude of purchasers who, forgetful of the doctrine of caveat emptor, have been misled by a judicial decree into impliedly assuming a good title in the husband; the extent of their venture is a formal bid by which they are as yet not seriously hurt; the orphans' court, which is a court of equity, is still open to them for such equitable relief as a chancellor, in view of all the facts, adjudges them entitled to.

The question then is, solely, what was the intent of Mrs. Taylor by the devise in the will already quoted? There was a distinct alternative gift to the husband: 1. He could have the property and carry on his business of milling the same as if she were alive so long as he lived; or, 2. He could sell the property, and receive absolutely of the purchase money $2,000,

and the balance, after payment of her debts, there being then a mortgage upon it, he could put at interest for her son. Apparently, the husband long hesitated as to which of these gifts he would accept, for he kept the will in his possession without proving it for two years and seven months, when he took out letters testamentary. The first gift expresses the primary intention of the testatrix, or, rather, it gives to the husband a life estate, with an implied wish or expectation that he will accept it; but if he do not accept, then he shall have power to sell the property, keep for himself $2,000 of the money, pay the debts, evidently the mortgage of $3,000, and "put out" the balance of the purchase money as trustee for the son. There is not the least indication of an intention that the husband should have the entire estate in the land, on payment of the debts and investing any part of its value for the son. If that had been her intention she would not have so plainly said it should be sold; she had no thought of other than a bona fide sale to a third party who should pay the price in cash, that the husband might appropriate it as she directed. Now, what did the husband do? Apparently, he did not, under the will, accept the life estate; then devolved on him the one duty as executor to actually and fairly sell; he did ostensibly sell, and at a fair price, but to whom? To himself. As to this feature of the case, perhaps, after this lapse of time, if his duty as executor had been faithfully performed, the regularity of the sale could not have been successfully questioned, or rather, the irregularity would not of itself have avoided it. If the intention of the testatrix had been effected, even by an irregular method, that is, if the debt had been paid and the balance put out for the son, a fair price having been obtained, no good purpose could have been reached by declaring the sale void on grounds of public policy. But, on the undisputed facts, the purpose of the executor was to defeat the intention of the testatrix by an ostensible sale, and so far as his conduct could carry out his purpose, it was successful; that purpose, as shown by his conduct, was to get the fee of the land unincumbered by any claim of the son. So he sold, really, to himself. Under this sale he enjoyed the property during his life as if the owner in fee, and neither paid his wife's debt nor put out the balance, after deducting his $2,000 for her son. The defendants having paid nothing, the

contest here is the same as if the father's devisees under a will were defending possession on the Goodman deed against the claim of the son under his mother's will. In Chronister v. Bushey, 7 W. & S. 153, where administrators bought through another, and then took a reconveyance to themselves, it was held equity would avoid the transaction at the election of the cestui que trust without regard to the fairness of it, and even although the administrators had paid out the purchase money to the creditors of their intestate. In Shuman's Appeal, 27 Pa. 64, it was said: "It is certainly not necessary to decide now that an executor who buys at his own sale, or what is the same thing, gets another to buy for him, holds the land on the same trusts it was subject to before the sale." The authorities to the same effect are very many, and if there were none this transaction would impel us to make one.

But it is argued by appellees, the will, by a direction to sell, worked a conversion; that there was an express power to sell, and direction to distribute the proceeds as money, therefore, the son has no interest in the land, but must look to the purchase money.

There was not here, as in many of the cases cited by appellees, a blending of real and personal estate to raise money for distribution; the estate was land exclusively; specific bequests of the personal property had passed all she had to other legatees. Nor was there any positive direction to sell the land; the words, "the balance of the property to remain as it is under the care of my husband," indicate, as before noticed, a desire that its character should not be changed; then follow the words "My husband to have power to sell at any time," if he chooses to take the $2,000 in money. This language fails to express any positive direction to sell; at most, confers a power to be exercised at the option of the executor. To establish a conversion of land into money under a will, the sale must be absolutely directed, irrespective of contingencies, and independent of discretion: Anewalt's Appeal, 42 Pa. 414; Peterson's Appeal, 88 Pa. 397. We do not see that this will conferred more than a power to be exercised upon a contingency; until the exercise of the power in accordance with the terms of the will the estate remained land. And there never was a valid exercise of the power as against the plaintiff; there was the semblance of it,

which turns out to have been a mere subterfuge for purpose of divesting the son's title and vesting the whole estate in the father. Such sale is void as against the son, and being so, the son's right to the land remains as before. The father being now dead, and having enjoyed the life estate to the full, the son is entitled to the remainder devised to him by his mother's will.

For these reasons, the judgment is reversed and a v. f. d. n. is awarded.