In re Assigned Estate of Edward Handy, Jr.  Appeal of William H. Larned and Edwin J. Haas, Copartners of the firm of Larned & Haas.

*Will—Vested interest—Lien—Trust and trustees.*

Where a testator leaves his estate, consisting of real and personal property, in trust, and directs that after the death of his widow it shall be divided into four equal parts, leaving it absolutely to the discretion of the trustees as to how each one fourth part shall be made up, the beneficial owners of the respective parts have not, until the allotment is made, a vested interest in any part of the land, but a mere possibility or expectation, which is not the subject of lien.

Argued March 23, 1897.  Appeal, No. 582, Jan. T., 1896, by William H. Larned et al., from decree of C. P. No. 4, Phila. Co., June Term, 1893, No. 674, overruling exceptions to report of master.  Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Exceptions to master's report.

The case was refered to A. T. FREEDLEY, Esq., as master, who, after reciting the facts found by him in Handy's Estate, 167 Pa. 554–8, reported as follows:

Upon these facts on the former appeal, 167 Pa. 552, the Supreme Court held: 1. That this case was a proper one for the court to exercise the jurisdiction conferred by the act of 1876, by staying the execution issued by Larned & Haas, and directing that a sale be made by the assignee for the benefit of creditors; and 2. That the interest to be sold should be the three sixteenths undivided interest in remainder of E. S. Handy, Jr., in the entire estate of his father.

The Supreme Court further referred the case back to the master to ascertain the liens upon said undivided interest, if any, which would remain after the said sale, and those which would be discharged by such sale; together with their several amounts and their respective rank of priority.

Upon the second hearing before the master additional testimony was taken and proof made: (*a*) That the life tenant is now seventy-three years of age.  The youngest son, H. H. S.

Handy, is now twenty-nine years of age. (b) As to the value of the real and personal estate of the testator; and (c) that the executors had accounted in the orphans' court, and had handed over the assets to the trustees named under the will, but that said executors had not been discharged.

The testimony as to the value of the real and personal estate was, ultimately, conceded by all counsel to be immaterial.

The object of the testimony as to the transfer of the assets by the executors to the trustees was for the purpose of endeavoring to set aside the assignment by E. S. Handy, Jr., of April 29, 1893, to the executors, as being an assignment to one person in trust for another, the counsel for Messrs. Larned & Haas contending that in reality it was an assignment to executors in trust for the trustees, and hence invalid, as not being recorded within thirty days, under the decision in Kern v. Powell, 98 Pa. 253. This point is not an open one before the master. It was directly decided in the former report and affirmed by the Supreme Court.

Even if the point were open the conclusion of the master would be the same. The real creditor is the estate of E. S. Handy, and whether the assignment was made to executors or to trustees would seem to be immaterial, as long as it was for the benefit of that creditor estate. As matter of fact the trustees are also executors, together with the widow. The acts of 1818 and 1843 were not intended to apply to this state of facts.

The only questions before the master are those referred to him by the decision of the Supreme Court, and this depends upon the construction of the will of the testator. By the eighth item of his will the testator devised and bequeathed his estate to the Philadelphia Trust, Safe Deposit and Insurance Company in trust for his wife for life, and after her death directed that the trustees should pay to his sons on their respectively attaining the age of twenty-five and twenty-eight years three fourths of their share in the testator's estate, their respective shares " being one-fourth part of my estate," the remaining fourth to be held by the trustees under a spendthrift son's trust. Full powers of sale were given to the said trustees. By the second codicil to his will the testator provided as follows :

" I hereby revoke the authority given to my said trustees in the ninth item of my will to sell my real estate in the city of

Philadelphia and I further direct that upon the death of my wife my said trustees shall divide my estate both real and personal into four equal shares and one equal share shall be held by my said trustees for each one of my said children upon the trusts and for the same purposes as are set forth in my will, and for no other trust or purpose whatsoever. And of this division and allotment they shall cause a record to be made in the office of the recorder of deeds for the county of Philadelphia. I authorize my trustees however to sell any vacant lots on Kensington or Lehigh avenues of which I may die seized whenever they can do so advantageously."

By the third codicil the testator empowered his trustees to sell any of his real estate except that situated in the nineteenth and twentieth wards of the city of Philadelphia, and his Digby residence, the latter restriction being under certain conditions.

In alluding to the nature of the interests thus created the first report of the master stated:

" Under the will of the testator, while the said E. S. Handy, Jr., has a vested remainder in three sixteenths of the entire estate of the testator, yet it is doubtful whether any title vests in the said E. S. Handy, Jr., in any specific piece of property constituting that three sixteenths interest. The testator by his second codicil directs that after the death of the widow the said trustees shall divide his estate, both real and personal, into four equal shares, which are to be held and disposed of as provided in the will, and that the said trustees shall make a record of this division and allotment in the office of the recorder of deeds. It is the trustees who are to make this division, and although the allotments may be equal in gross they are not necessarily specific interests in each specific piece of property. Authority to partition implies authority to make equality—one house may be assigned to one distributee and another house to another. It was to prevent the necessity of the distributees holding together undivided interests in common, and being compelled to resort to partition by bill in equity and consequent sales of interests, that the testator provided for division and allotment by the trustees. To vest the title in specific pieces of property in the distributees the allotment and division was ordered to be recorded in the recorder of deeds office. The sole restriction upon the trustees' powers is that such division and

allotment shall be equal in gross to similar divisions and allotments to other distributees."

Upon appeal the Supreme Court, per Mr. Justice MITCHELL, said:

"As will be noticed more fully hereafter no specific gift is made to him (E. S. Handy, Jr.) of any part of the estate, real or personal, but only a share in the sum total of the value of both, and it is open to argument that his interest in realty as such will begin only in the event of any realty being set apart to him in the division which the trustees shall make hereafter. That his interest in the estate as a whole is vested and liable for the payment of his debts, as the master held, does not settle the question of its present liability as land to the lien of a judgment."

And the learned justice further said:

"Moreover, of what the debtor's share shall finally consist as to realty or personalty is and must remain entirely uncertain and contingent until after the death of the life tenant, when the trustees are to make partition and distribution in their unfettered discretion, so that they make 'four equal shares,' and until that time there is a power of conversion in the trustees as to a considerable portion of the realty by a sale, which would under the will be paramount to any interest of Handy, Jr., or a purchaser of his title in any part of the realty. Nothing could be more utterly vain and speculative than an attempt to fix the value of the debtor's interest in the real estate under such circumstances. He may not have any real estate at all, for, as the personalty is more than two thirds of the whole, the trustees may allot his entire share in personalty; or on the other hand, they may put it all in realty, with or without owelty. The one thing in all this maze, which is capable of even an approximate estimation, is the general value of his interest in his father's estate as a whole, real and personal combined."

And in deciding that a creditor would not have a right to use his lien as equivalent to money in bidding at the sale, the learned justice further said that this resulted—

"By the testator's act, in giving his son an undivided remainder in the blended real and personal estate, so that the latter's interest in the realty alone, if any he has, is impossible of present ascertainment."

The question, however, although so directly alluded to, was not decided. Hence, in accordance with the directions of the Supreme Court the master proceeds to ascertain—

1. What liens exist against the interest of E. S. Handy, Jr. ?

Messrs. Larned & Haas claim a lien against the interest of E. S. Handy, Jr., in the real estate of his father by virtue of their judgment of July 11, 1893. As a judgment is not a lien upon personalty, and as execution was not here issued until after the assignment for the benefit of creditors, the question is whether E. S. Handy, Jr., has such an interest in land as is bound by the lien of a judgment. In Pennsylvania a judgment binds equitable, reversionary, and even inchoate interests, but those interests must be estates in the land, and unless the debtor has an interest in specific real estate which he could himself convey, a judgment against such debtor is not a lien against said real estate. In Morrow v. Brenizer, 2 Rawle, 188, Chief Justice GIBSON said:

"It is supposed that a judgment is a lien on every possible interest in land, whether immediate or remote, actual or contingent. This takes for granted that the legatee had in fact an interest in the land. . . . But, it is proper to remark, that both the major and minor are untrue. The interest of a mortgagee, judgment creditor, owner of a legacy charged on land, creditor of an intestate estate, mechanic or material man, or of a preferred creditor under an assignment to trustees (to each of whom the land is debtor), is not the subject of judgment and execution. Nothing is such but an immediate interest, as, for instance, the estate of a tenant by the curtesy initiate; or of a widow, whose interest is put, by the intestate acts, on the footing of a rent charge. The only thing peculiar to a judgment with us is that it binds an equitable, or even an inchoate interest, but that interest must be an estate in the land." So in Thomas v. Simpson, 3 Pa. 69, the court said: " In Pennsylvania a judgment is a lien on every kind of equitable as well as legal interest in land vested in the debtor at the time of the judgment, and such interest may be seized and sold in execution in payment of debts. A rent charge on estates of a tenant by curtesy initiate; or widow's dower, her interest being put by the intestate acts on the footing of a rent charge; or right or title in land, although unaccompanied by possession; in short, every

interest, of every description, provided it be an interest in the land, may, in this state, be sold on execution." To the same effect are Allison v. Wilson, 13 S. & R. 330; Hess v. Shorb, 7 Pa. 231. Hence it has been held that a judgment is not a lien upon the right to live upon land belonging to another: Calhoun v. Jester, 11 Pa. 474. Nor upon an easement consisting of a right of way or occupation of certain land: Western Penna. R. Co. v. Johnston, 59 Pa. 294. This principle was applied in a different form in Colhoun v. Snider, 6 Binn. 135; Ross's Appeal, 106 Pa. 82; Waters's Appeal, 35 Pa. 523.

Applying these principles, it will be observed that under the will, while the interest of a son is vested, yet that such interest is a general interest in the testator's entire estate, and not in any separate or distinct item thereof. The sole right of the distributees is, after the death of the widow, to receive something which will amount to one fourth of the entire estate of the testator, and this is to be worked out by the trustees alone, and it is their decision and allotment which the testator directs shall be recorded in the office of the recorder of deeds, which alone vests the title in specific pieces of property. Prior to allotment, of what real estate is E. S. Handy, Jr., seized? What specific land could he convey? Upon what real estate could the sheriff post his notices of execution? The interest of E. S. Handy, Jr., is not a three sixteenths interest in each piece of land of which the testator died seized, for that would imply a jurisdiction to compel the trustees to allot a three sixteenths interest in each tract or house to the said E. S. Handy, Jr. The only control which E. S. Handy, Jr., has over the trustees, and his only present specific interest in the estate, is an interest to compel a proper execution of the trust, viz: to compel an allotment of one equal fourth part to the said E. S. Handy, Jr. He has no interest to compel the allotment of specific items of the estate. That discretion the testator has vested in his trustees by the second codicil, and this clause has been decided by the Supreme Court and held to empower the trustees to make allotment "in their unfettered discretion," the only limitation being that it shall be divided into "four equal shares:" Handy's Estate, 167 Pa. 564. The trustees could allot one share in personalty, provided that it was equal in value to every other share. Under the evidence there is ample personalty to make such allotment. The

scheme of the testator is apparently not to invest any child with any specific interest in any specific property prior to allotment and division by the trustees. The powers of sale vested in the trustees as to many properties would lead to the same conclusion as to the testator's intention, for a sale of any piece of real estate by the trustees under their power would defeat the title of a judgment creditor, and searches would not be taken out against the cestuis que trust, who are distributees. Under the statute executors who are given powers of sale are invested with the estate.

The interest of E. S. Handy, Jr., under the present will would seem to be somewhat analogous to the interest of the distributees in Chew's Executors v. Chew, 28 Pa. 17, where a testator authorized his executors, after they had obtained knowledge of the condition of his estate, to convey at their discretion lands to his children as the executors might select; and it was held that the children had no estate in the land until it was conveyed to them by said executors.

The fact that the will does not operate as a conversion, as has been argued, does not affect the determination of this question. If there was a conversion, of course no lien by judgment would attach. But because there is no conversion it does not follow that the interest of E. S. Handy, Jr., is a specific interest in each piece of real estate of which his father died seized. The rights and interests of E. S. Handy, Jr., are solely conferred by the will of his father, and he takes them in such manner as the testator chooses to direct, and there is nothing illegal in the testator giving a vested interest in the execution of the trust, and deferring that vesting as to any specific item of his estate within any time regulated by the rule against perpetuities. No illegal injustice to creditors is effected by such provision, for the testator, had he so chosen, could have exempted the entire interest from liability of every kind to creditors by making a spendthrift son trust of the entire interest, instead of as to only one fourth thereof, as he has done. The question is, whether E. S. Handy, Jr., has such a tangible interest in the land of which his father died seized qua land, as entitles a judgment to become a lien thereon, or whether, on the contrary, the interest of E. S. Handy, Jr., is simply an interest in a blended fund, the specific proportions of which are

impossible to ascertain until division. In the opinion of the master the latter is the correct construction of the testator's will. To hold that prior to allotment each son is invested with a specific interest in each specific piece of real estate, of which the testator died seized, whereby executions may be issued, and a specific interest sold in certain described real estate, would seem necessarily to conflict with the plan of distribution provided by the testator, as it divests the trustees of any discretion whatever in making their allotment and division. By such construction it would necessarily follow that the trustees had no discretion other than to make their allotments so that each share should contain an equal fourth interest in realty and an equal fourth interest in personalty. Whereas the Supreme Court in this case have held that the trustees are to make such " partition and distribution in their unfettered discretion, . . . and the trustee may allot his share in personalty, or on the other hand, they may put it all in realty with or without owelty."

It was, however, argued that all parties in interest had a right to elect to dispense with the execution of the trust, and to take the land as land, and that the judgment given by E. S. Handy, Jr., was evidence of his election to take sufficient land as land as would be necessary to satisfy the judgment. But E. S. Handy, Jr., could not disturb the will by his sole election, and there was no evidence of any election on the part of the other distributee; and, moreover, giving a judgment would seem to be no evidence of such an election on the part of E. S. Handy, Jr. The judgment was establishing by matter of record the validity and amount of an existing indebtedness. Such judgment could be enforced against personalty as well as realty, therein differing from a mortgage, which was held to be a provisional election in Bailey v. Allegheny Bank, 104 Pa. 425. In the last-named case it also appears that all the other distributees under the will had united in an express election. If giving a judgment is to be treated as an election under a will to appropriate land to satisfy the judgment, it might in this case, with equal force, be conversely argued that the prior assignment by E. S. Handy, Jr., of April 29, 1893, to the Philadelphia Trust Company, was equally declaratory of his intention to elect to appropriate so much personalty as would be necessary to fully satisfy that assignment.

Hence the master reports that the judgment of Larned & Haas is not a lien upon the interest of E. S. Handy, Jr., in his father's estate.

The result does not lessen the liability of the interest of E. S. Handy, Jr., to pay his debts, and it does not deprive Larned & Haas of their rights as creditors. It simply puts them upon an equality with all creditors other than the executors of the estate.

The only other claimants who assert a lien are the executors of the estate. On April 29, 1893, E. S. Handy, Jr., conveyed all his right, title and interest in his father's estate to the executors to secure the payment of the sum of $42,031.13, the amount stated in the said assignment to be the indebtedness of E. S. Handy, Jr., to the said estate. At this date the trustees, who (except the widow) are also executors, were and are in possession of the estate. It was in the language of the Supreme Court "a valid and effective assignment." The executors, therefore, have a lien upon the interest of the said E. S. Handy, Jr., under his said assignment of April 29, 1893.

Under the evidence, the amount for which the executors have a lien is, as of January 1, 1896, the sum of $44,188.73. As appears in the second original finding of fact, this is composed of three promissory notes, given by E. S. Handy, Jr., to his father, amounting to $24,746, and of the sum of $17,285.13, being the amount due by the said E. S. Handy, Jr., upon the pledge of certain shares of stock loaned him by his father and redeemed by the executors' payment of this sum of $17,285.13. This last-named indebtedness arose in the lifetime of the testator, the said testator having loaned his son fifty shares of the Philadelphia Trust Company stock, for the purpose of borrowing for the use of his said son such sum as the Philadelphia Trust Company might loan thereon to him. The Philadelphia Trust Company thereupon loaned the said E. S. Handy, Jr., $18,000, which was subsequently reduced by payments to $16,500. On April 29, 1893, this sum amounted, with interest, to the aforesaid sum of $17,285.13, and as the stock was more valuable than the amount of the loan, the executors reduced the liability to a cash basis by paying the debt for which it was pledged. As this indebtedness arose from the express act of the testator in his lifetime, being in reality a loan of cash by the testator in the form of stock, which was liquidated in cash by the execu-

tors, it would seem that, although not recited in the will, its validity is the same as the other loans made by the testator, which were so set forth in his said will.

The indebtedness of E. S. Handy, Jr., to his father's estate was stated, by the agreement of April 29, 1893, to be at that date $42,031.13.  Apart from this liquidation, the master has investigated the amount of the indebtedness and finds that the sum stated in said agreement is correct, and that all interest thereon had been previously paid or adjusted.  The executors presented a claim for interest on the notes held by the testator from 1881 down to the testator's death in 1889, but this claim was negatived by the evidence and by subsequent admissions. Since the testator's death the interest on these notes has been paid in full to October, 1895, by deductions from E. S. Handy, Jr.'s share of the income of the estate.  The result is, that the total indebtedness of E. S. Handy, Jr., for which the executors have a lien, is, as of January 1, 1896, the amount of the notes held by testator, viz.  .    .    .    .    .    .    .    $24,746 00

With interest at five per cent from October 2, 1895,
    to January 1, 1896  .    .    .    .    .    .        305 89

And the additional sum of  .    .    .    .    17,285 13

With interest at six per cent to January 1, 1896, less
    partial payments  .    .    .    .    .    .      1,851 71
                                                    ───────────
Making altogether, as of January 1, 1896 .    .    $44,188 73

The assignment of April 29, 1893, was not recorded prior to the judgment of Larned & Haas, but if the master is correct in finding the judgment of Larned & Haas is not a lien it would be unnecessary to discuss the effect of such nonrecording.  If, however, the master should err in his decision as to the nature of the interest of E. S. Handy, Jr., in the estate, it would still seem that, as against Larned & Haas, the unrecorded assignment is, under the decision in Davey v. Ruffell, 162 Pa. 443, as valid as if it had been duly lodged for record, for Larned & Haas, being neither purchasers nor mortgagees, but merely judgment creditors, were not within the purview of the recording acts.

Whether the sale will be subject to or discharged from the executor's lien.

The executors joined in the prayer of the assignee's petition, and by their answer, filed of record, prayed and consented that

the sale might be free and discharged from the lien which they held by virtue of their assignment of April 29, 1893, and that their rights should be asserted upon the fund to be produced thereby. The former decree of the master, decreeing a sale discharged from their lien, was made upon their consent. This of course binds them.

Apart from this, the same conclusion would seem to result under general doctrines. Thus, the interest created by the assignment of April 29, 1893, is such an interest by way of lien as would seriously embarrass any private sale attempted to be made by the assignee. In the language of the act of 1876, it is to the "manifest interest of all parties" that the purchaser's title shall be a clear and unincumbered title. Otherwise the property would be more or less sacrificed in value, as the purchasers would be compelled to speculate on the duration of the life of the widow in determining how long they could hold the property before being called upon to pay the principal of the lien subject to which they bought it, and the existence of this prior lien and its uncertain duration would also prevent the purchasers from borrowing money thereon by way of mortgage or other charge, and in other ways add to the unmarketability of the title. These contingencies would defeat the obtaining a fair price for the property, and it is obviously the interest of Messrs. Larned & Haas, as well as the assignee, that the sale shall be made in such manner that the largest price can be obtained. The executors are also interested in such result, and hence themselves pray that the sale may be free and discharged from any claim upon their part, and that their rights shall be asserted upon the fund to be produced thereby. There does not seem to be any rule of law which prevents this. The decisions are the other way, for the indebtedness to secure the payment of which the assignment of April 29, 1893 was executed, in so far as said indebtedness consists of the amounts advanced by the testator, has been decided by the Supreme Court to consist merely of loans and not technical advances; and in so far as said indebtedness is composed of the amount due by E. S. Handy, Jr., upon the stock loaned him by his father, such indebtedness is also clearly a loan. Hence the entire sum for which the interest of E. S. Handy, Jr., in his father's estate is held by the executors of the estate is a debt due by the said

E. S. Handy, Jr., to the estate charged upon his share thereof, and it has always been so treated by the executors, the trustees, and the said E. S. Handy, Jr. Such charges will be discharged by judicial sale : Reed v. Reed, 1 W. & S. 239 ; Hiester v. Green, 48 Pa. 102 ; Strauss's Appeal, 49 Pa. 353 ; Woods v. White, 97 Pa. 222 ; Pryer v. Mark, 129 Pa. 529. It is therefore submitted that the interest of E. S. Handy, Jr., will be sold free and clear from any charge or lien against E. S. Handy, Jr., whether imposed by the act of the testator or the act of the said E. S. Handy, Jr., and that the purchaser will take title clear and discharged therefrom.

The master therefore reports that the only lien upon the interest of the said E. S. Handy, Jr., in his father's estate, is that of the executors of the estate of E. S. Handy, Sr., in the sum of $44,188.73, as of January 1, 1896 ; that the sale shall be made discharged from said lien ; that the amount of purchase money to be realized at said sale shall be paid to the said executors to the extent of their said lien thus discharged, and the balance, if any, shall be paid to the assignee for the benefit of creditors of E. S. Handy, Jr., as general assets.

The master submits a form of decree herewith. The recitals and provisions in the decree not embraced in this report are stated from the master's first report for the reasons therein contained.

### DECREE.

And now, this                    day of                    , A. D. 1896, the cause coming on for further consideration, it is ordered and decreed that E. S. Handy, Jr., is, inter alia, entitled under the will of his father, Edward S. Handy, Sr., to an undivided, vested three sixteenths absolute interest in remainder after the death of Mrs. R. A. V. Handy, now aged seventy-three years, in the real and personal estate late of the said Edward S. Handy, Sr., and also subject, so far as the Digby homestead is concerned, to the right of occupancy therein of H. H. S. Handy, Alice Baltzell (formerly Handy), and Virginia S. Handy ; that the assignees for the benefit of creditors of the said E. S. Handy, Jr., shall sell said undivided three sixteenths interest in remainder at public auction in the city of Philadelphia, after twenty days' prior notice thereof published in two newspapers in the said city, and also in the Legal Intelligencer, which said

advertisements shall contain a full statement of the real and personal estate of Edward S. Handy, Sr., of which the said undivided three sixteenths interest forms part; that the purchaser at said sale shall acquire the aforesaid entire undivided three sixteenths interest in remainder in the said estate free, clear, and discharged of and from all liens or charges against the same imposed by the will of Edward S. Handy, Sr., or the acts of E. S. Handy, Jr.; that ten per cent of the purchase money shall be paid in cash at the time of sale and the balance upon confirmation thereof; that prior to making said sale the assignee shall enter security in the sum of $40,000, to be approved by the court; and that the assignee shall report said sale to the court for confirmation thereof.

And it is further ordered and decreed that the purchase money realized by said sale shall be paid to the assignee, who, after deducting the proper costs and expenses of sale, shall pay therefrom unto the executors of the estate of Edward S. Handy, Sr., the sum of $44,188.73, as of January 1, 1896, or so much thereof as the fund may realize, and the balance, if any, of said purchase money shall be retained by the assignee as general assets for the benefit of the creditors of E. S. Handy, Jr.,

Exceptions to the master's report were overruled.

*Errors assigned* were in overruling exceptions to master's report.

*Joseph L. Tull* and *William Drayton*, for appellants.—Handy's interest under the will was vested: Shalters v. Ladd, 141 Pa. 349; Irwin v. Patchen, 164 Pa. 51; Hunt's App., 105 Pa. 128; Follweiler's App., 102 Pa. 581; Hobson v. Hale, 95 N. Y. 589; Scholle v. Scholle, 113 N. Y. 261; Chamberlain v. Taylor, 105 N. Y. 194; Crawford v. Ford, 7 W. N. C. 532; McClure's App., 72 Pa. 414; Bleight v. Bank, 10 Pa. 131; King v. King, 13 R. I. 501; Jones v. Caldwell, 97 Pa. 42; Lynch v. Dearth, 2 Penrose & Watts, 101; Winch's App., 61 Pa. 424; Bank v. Stauffer, 10 Pa. 398; Carkhuff v. Anderson, 3 Binney, 4; Withers's App., 14 S. & R. 185; Lindley's App., 102 Pa. 235; Dundas's App., 64 Pa. 325; Page's Est., 75 Pa. 87; Roland v. Miller, 100 Pa. 47; Sheridan v. Sheridan, 136 Pa. 14; Willing v. Brown, 7 S. & R. 467; Church's App., 7 Atl. Rep. 751;

Rawle's App., 119 Pa. 100; Wright v. Vickers, 81 Pa. 122; Chouteau v. Paul, 3 Mo. 260; Strode v. Churchill, 2 Littell (Ky.), 75; Doe on the Demise Cadogan v. Ewart, 7 A. & E. 636; Phipps v. Williams, 5 Sim. 44; Barger's App., 100 Pa. 239; Bacon's App., 57 Pa. 513; Schwartz's Est., 168 Pa. 204; Middleswarth's Adm'r v. Blackmore, 74 Pa. 414; Bailey v. Bank, 104 Pa. 425; Docker v. Somes, 2 Mylne & K. 664; Hill on Trustees, 494; Warner's Est., 130 Pa. 359; Hart v. Homiller, 20 Pa. 39; Dean v. Winton, 150 Pa. 227; McConomy's Est., 170 Pa. 140; Fagan v. Bank, 34 W. N. C. 20; Pearce v. Wilson, 111 Pa. 14; Helfenstein's Est., 135 Pa. 293; Lahr's App., 90 Pa. 510.

*John G. Johnson*, with him *C. Berkeley Taylor*, for appellee. —There was no interest to which a lien would attach: Ashhurst v. Given, 5 W. & S. 323; Vaux v. Parke, 7 W. & S. 19; Hobson v. Hale, 95 N. Y. 589; Scholle v. Scholle, 113 N. Y. 261; Chamberlain v. Taylor, 105 N. Y. 194; Crawford v. Ford, 7 W. N. C. 532; Morrow v. Brenizer, 2 Rawle, 188; Ingersoll's Est., 167 Pa. 536; Bailey v. Bank, 104 Pa. 425; White's Est., 178 Pa. 280.

*R. L. Ashhurst*, with him *Rowland Evans*, for appellees, the Philadelphia Trust, Safe Deposit and Insurance Company et al.

OPINION BY MR. JUSTICE MITCHELL, July 15, 1897:

The matters involved in this controversy were before this court in Handy's Estate, 167 Pa. 552, and most of them decided. The principal question now raised is whether the estate of E. S. Handy, Jr., under his father's will included any interest in land which would be subject to the lien of a judgment against him. This question was incidentally considered in the former case but in the state of the record then was not decided though some intimation was given of the leaning of the court. The learned master, however, to whom the matter was referred back for the ascertainment of the liens and the effects of the sale upon them, took up the question anew with great learning and ability, and has stated his conclusions with such clearness and accuracy that little more is necessary for us than to express our approval of them.

The testator left his estate in trust but gave a beneficial interest in one fourth of it to his son E. S. Handy, Jr.   The proportionate part was fixed but the specific property of which it should consist was left wholly within the control of the trustees, and could only be determined when they made the division directed by the testator on the death of his widow.   Such division is within their absolute discretion, subject only to the requirement that it shall be into equal fourths in value.   They may set apart as this son's share all personalty, or all realty, or a portion of each.   Until such allotment he has no vested interest in any part of the land, but only a mere possibility or expectation, not the subject of lien.

Decree affirmed with costs.