## Staller Estate

*Raymond L. Brennan*, for accountant.

*John S. Lewis*, for purchaser of property.

*C. J. Friedberg*, for claimant.

GANGLOFF, P. J., October 22, 1956. — The other claims listed in the statement of proposed distribution

are in fact claims against Harry Kremer, or Harry W. Kremer, admittedly a distributee under decedent's will. There are two judgment liens in the list so reported, and both of these liens were entered upon the death of Clara Staller, decedent. The first question is whether these two judgments, entered as already mentioned, are liens against the interest of defendant in decedent's real estate. The rule is clearly stated in Kemerer v. Johnstone, 318 Pa. 526, at page 528:

"The interest of the distributees under the will being subject to the power of sale given by testator for the benefit of all of them, the judgment against one of them is necessarily divested on the sale of the land in its entirety, as resulted from the execution of the power". See also Shaffer Estate, 360 Pa. 390.

In the present case there is a power to sell the real estate included in the will; this power was duly exercised by the personal representative and there can be no doubt therefore that this sale divested the two judgment liens in question in so far as decedent's real estate is concerned.

How far is this court required to go with respect to claims of creditors of a distributee? To entertain a claim made against a distributee, the orphans' court would be totally without warrant in the statute and contrary to the universal practice of that court; it would be involving that court in the settlement of claims belonging to the common law courts and not appertaining to its jurisdiction: Carter's Appeal, 10 Pa. 144. See also Kenin's Estate, 346 Pa. 127; Kenin's Estate, 150 Pa. Superior Ct. 544. The general rule is that creditors of a distributee may be recognized in the orphans' court only if their claims are reduced to judgment and attachment is issued. See Andrews Estate, 88 D. & C. 583, and authorities there cited. (It should be added that the Commonwealth as creditor of

a distributee is given certain statutory advantages which are not applicable to other creditors).

In the present case, plaintiffs in the two judgments against a distributee have not instituted attachment proceedings and, therefore, this court is without authority to enforce their claim against the distributee in question.

As already noted, Harry W. Kremer, one of the distributees, assigned his interest in decedent's estate to the Commonwealth as security for public assistance granted to him by the Department of Public Assistance. Of course, this assignment may be recognized only to the extent of the amount thus far expended in his behalf by the Commonwealth. It appears that as of May 5, 1956, there was due the Commonwealth $354, and there is also due $29.50 for each two-week period thereafter and down to the present time a total of 12 periods at $29.50 each, or $354, making an overall total of $708 presently due the Commonwealth under the assignment. An award will be made accordingly . . .

*Decree Amending Decree of Distribution*

GANGLOFF, P. J., January 28, 1957.—On October 22, 1956, a decree of distribution was entered in connection with the adjudication of the final account of the administrator c.t.a. of the above captioned estate. That decree includes the following award:

"Harry Kremer, as follows:

"To Commonwealth of Pennsylvania, Department of Public Assistance, assignee . . . $708.00
"Cash, balance to him . . . . . . . . . . 450.24
                                          ─────────
                                          $1,158.24"

Harry Kremer, the above named distributee, is one of the children of Clara Staller, who died on November 22, 1955, and who, in her will, disposed of her real

estate, consisting of the property identified in her will, as follows:

"Item 5. It is my wish and desire that my hereinafter named Executors shall have the right and authority to sell my property #424 Orchard Ave., Schuylkill Haven, Pa., either at public or private sale, as soon as conveniently may be after my decease.

"Item 6. It is my wish and desire after above named property #424 Orchard Ave., Schuylkill Haven, Pa., is sold, and all expenses paid, the balance shall be equally divided between my children, Mary Grove, Harry Kramer, Gertrude Alcorn, Dorothy Moore, Mildred Ready, Milton Kramer's children, namely, Milton Kramer and June Kramer shall receive their father's share."

The balance for distribution is real estate proceeds.

At the audit of the administrator's final account, two claims were presented and pressed against the distributive share of Harry Kremer (Kramer), namely, the First National Bank and Trust Company of Schuylkill Haven, plaintiff in a judgment lien entered against Harry W. Kremer for $375, and Bessie Kremer Holecz, plaintiff in a judgment lien entered against Harry Kremer for $2,597. Both these judgment liens were entered after the death of Clara Staller, and defendant in each judgment is the same person as Harry Kramer, *one* of the beneficiaries named in decedent's will. Counsel for plaintiffs in these two judgment liens contended that these judgment liens are in fact liens upon the undivided interest of defendant in the real estate referred to in the will and, upon its sale, follow his share of the proceeds of sale. In our adjudication of the administrator's account it was determined that the judgment liens entered against Harry Kremer, a distributee, after the death of decedent, were divested by the sale of the real estate under the power of sale given in the

will, citing Kemerer v. Johnstone, 318 Pa. 526, at page 528, now repeated:

"The interest of the distributees under the will being subject to the power of sale given by testator for the benefit of all of them, the judgment against one of them is necessarily divested on the sale of the land in its entirety, as resulted from the execution of the power." In that same adjudication it also was determined that the only remedy open to the two judgment creditors short of an assignment from Harry Kremer, the distributee, is to institute attachment proceedings in another court. Citing Carter's Appeal, 10 Pa. 144; Kenin's Estate, 346 Pa. 127; Kenin's Estate, 150 Pa. Superior Ct. 544; Andrew's Estate 88 D. & C. 583.

We have learned that counsel for plaintiff in the second of the above mentioned two judgment liens accordingly instituted attachment proceedings in our court of common pleas to collect the $450.24 awarded, as already noted, to Harry Kremer. It also appears that a definitive judgment was obtained in the attachment proceedings and that, under authority of the decree, the amount was paid by the administrator-garnishee to the attaching creditor. Where a bona fide creditor of a distributee comes into this court at the audit of an account and requests that an award to the distributee-debtor be suspended pending a completion of attachment proceedings instituted in our court of common pleas against the share of the distributee, our uniform practice is to grant the request, providing assurances are given that the proceedings will be pressed to a conclusion without delay. The success or failure of the attaching creditor is then reported to this court and appropriate action follows.

In the present case no request was made at the audit hearing by either of the judgment lien creditors of Harry Kremer to hold in abeyance an award to the

debtor named pending completion of attachment proceedings and, therefore, the decree of distribution included an award to the distributee-debtor. No exceptions having been filed, the award became absolute, under our rules on Novemer 6, 1956.

As the record stands, the administrator is directed to pay to Harry Kremer the sum of $450.24, whereas another court has directed it to pay the amount to an attaching creditor. Since the orphans' court has the exclusive jurisdiction to ascertain the amount of the estates of decedents and to order their distribution among those entitled, creditors as well as legatees and distributees (see Slagle's Estate, 335 Pa. 552, at pages 557-558; section 301 of the Orphans' Court Act of August 10, 1951, P. L. 1163; also McCahan's Estate, 312 Pa. 515), it would appear to be the better practice, in attachment proceedings, such as we have here, for the attaching creditor to report to the orphans' court the amount of his claim as determined in the attachment proceedings, whereupon this court may then enter an appropriate decree. See Ellwanger v. Moore, 206 Pa. 234; Overbrook Heights B. & L. Assn. v. Wilson, 333 Pa. 449.

This court possesses the inherent discretionary power to correct its own records in the interest of justice (Kretzer v. Murry, 297 Pa. 451; Reamer's Estate, 331 Pa. 117) and, therefore, an amendment of the award to Harry Kremer will be decreed.

As to the award of $708 to the Department of Public Assistance, it now appears that, although the claim of the Commonwealth was certified in that amount at the audit hearing, the actual amount due is only $54.50. The Commonwealth claims under a written assignment from Harry Kremer, this assignment has the right of way over subsequent judgment creditors who issued attachment: Cottone Estate, 2 Fiduc. Rep. 483. The amount presently due the Commonwealth is $54.50,

and an amendment of the decree of distribution entered October 22, 1956, therefore is presently in order.

While no formal exceptions have been filed to the adjudication and decree of October 22, 1956, there is nevertheless a contention that the auditing judge erred in concluding that attachment proceedings are necessary to authorize this court to award any part of the distributive share of Harry Kremer, not embraced in the assignment from him to the Commonwealth, to his judgment lien creditors. This contention probably requires more detailed consideration than was given to it in our prior adjudication. However, as will appear, the contention is without merit.

Section 104 of the Fiduciaries Act of April 18, 1949, P. L. 512, provides: "Legal title to all real estate of a decedent shall pass at his death to his heirs or devisees, subject, however, to all the powers granted to the personal representative by this act and *lawfully by the will* and to all orders of the court." (Italics supplied.)

Of course, we limit our discussion to the facts of the present estate. That the two judgment liens in this case involved were divested on the sale of the land under the power granted in the will, as already pointed out, there can be no doubt and there is no contention otherwise. And to this may be added the following from section 547 of the Fiduciaries Act of 1949: "If the personal representative has given such bond, if any, as shall be required in accordance with this act, any sale . . . by him, whether pursuant to a decree or *to the exercise of a testamentary power* or of a power under this act, shall pass the full title of the decedent therein, unless otherwise specified, discharged from . . . all claims of distributees and of *persons claiming in their right.* . . ." (Italics supplied.)

The fund for distribution being proceeds of real estate sold, do the judgment liens in this case attach to

and follow the share of defendant in distribution? In finding the proper answer to this question we are not unmindful of the rule in partition proceedings that a judgment lien entered against an heir may follow the heir's interest in the proceeds of a sale. See Bavington v. Clarke, 2 P. & W. 115; Lucas' Appeal, 53 Pa. 404; Long's Appeal, 77 Pa. 151; Dickinson's Estate, 148 Pa. 142.

However, we are not here dealing with partition proceedings. The lien of a judgment binds real estate only: Fryhoffer v. Busby, 17 S. & R.. 121. Money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted, and this, in whatever manner the direction is given, whether by will, by contract, by marriage articles, by settlements or otherwise: Sweeney v. Horn, 190 Pa. 237. The application of this rule is so clearly set forth by Mr. Justice Gibson in Allison v. Wilson, 13 S. & R. 330, that we quote at length from the opinion, pages 332, 333:

"In equity, no rule is of more frequent occurrence in practice, than that by which land directed to be converted into money, or money directed to be converted into land, is to be treated as that species of property into which the one or the other is so directed to be converted. . . . The rule in equity already mentioned is not controverted. But, it is said, that in a case of this kind, the fee descends to the heirs of the testator, till the land is actually converted into money; and this, notwithstanding the act of the 31st of March 1792, in which it is provided that where a naked power to sell is given to the executors, they shall have the same interest in the land, as if it were devised to them to be sold; or, in other words, a power coupled with an interest. It is clear, from this act, that unless where the contrary is specially directed by the testator, the

executors take the legal estate, and nothing descends. *But even if this were otherwise, it would not vary the result;* (italics supplied); suppose the legal estate to descend, and remain subject, as it undoubtedly would, to the power to sell; it would, doubtless, be bound in the hands of the heir, by a judgment against him; but for how much? Surely, for just as much as *descended* to him; which would *be all that was not disposed of by the will.* The judgment-creditor could sell, and the purchaser could obtain, no more than what vested in the debtor, *as heir.* Then, when the estate of the purchaser comes to be divested by a sale, in execution of the power under the will, what right has he, in virtue of having owned the descended part of the estate, to the money arising from that part of it which never descended, but passed under the will as a personal bequest? Neither the judgment-creditor, nor the purchaser, in his stead, is the representative of Lewis Lowman (one of decedent's sons and the judgment debtor), to every intent. It is a maxim, that where two rights meet in the same person, they are to be viewed as if they existed in different persons. Now, if a different person from Lewis Lowman, the heir, were entitled under the will, how could a judgment-creditor of Lewis Lowman claim anything under the will? Hence, it is evident, that by virtue of a lien on the land of Lewis Lowman, the heir, his judgment-creditor will not be entitled to the personal interest of Lewis Lowman, the legatee. The argument attempted to be raised on this ground therefore fails."

Then, again, in Handy's Estate, 182 Pa. 68, what the court said, on page 82, is of interest here: "The testator left his estate in trust but gave a beneficial interest in one fourth of it to his son E. S. Handy, Jr. The proportionate part was fixed but the specific property of which it should consist was left wholly within the control of the trustees, and could only be determined

when they made the division directed by the testator on the death of his widow. Such division is within their absolute discretion, subject only to the requirement that it shall be into equal fourths in value. They may set apart as his son's share all personalty, or all realty, or a portion of each. Until such allotment he has no vested interest in any part of the land, but only a mere possibility or expectation, not the subject of lien." See also Weeter's Estate, 21 Pa. Superior Ct. 241.

We now go back to the provisions of the will in this case. That will provides for the sale of the real property and then provides for the distribution of the proceeds among decedent's children. Obviously what passes to the children is money, personalty, and not real estate, and a judgment lien entered against a distributee is not a lien on an undivided interest in the real estate. The judgment creditors are affected with notice of the provisions of the will (Mellon v. Reed, 123 Pa. 1), and their rights cannot rise higher than those which the debtor had: Fry v. Stetson, 370 Pa. 132. And if perchance a contention should be made that a distinction should be made between a direction to sell contained in a will and a mere power of sale, an effective answer will be found in Shaffer Estate, 360 Pa. 390, where the court said, pages 394-95:

"And, as was said in Taylor v. Haskell, 178 Pa. 106, 111, 35 A. 732, '. . . until the exercise of the power . . . the estate remained land'. But, the interests of the devisees therein may be subjected nonetheless to an exercise of the power by the executor in furtherance of the proper administration of the estate: cf. Kemerer v. Johnstone, supra, at p. 528."

It is clear, then, that the remedy (other than assignment) open to the two judgment lien creditors of Harry Kremer, a distributee, is attachment proceedings. Fol-

lowing our usual practice in such cases we shall hold in abeyance the distribution of the amount otherwise payable to Harry Kremer to give his judgment lien creditors an opportunity to institute appropriate attachment proceedings within 15 days herefrom and make report to this court within that period of the status of the proceedings; if no report is received within that period, it will be assumed that neither creditor desires to press the claim any further and an award will be made to the distributee named herein.

And now, January 7, 1957, for reasons hereinbefore stated, it is adjudged, ordered and decreed: (a) That the award to Department of Public Assistance, assignee, of $708 of the distributive share of Harry Kremer, and of $450.24 to Harry Kremer, included in the decree of distribution, entered October 22, 1956, be and hereby is opened and set aside; (b) that the administrator c. t. a. be and hereby is directed to pay out of the distributive share of Harry Kremer the sum of $54.50 to the Commonwealth of Pennsylvania, Department of Public Assistance, assignee; (c) that the sum of $653.50, part of the distributive share of Harry Kremer be and hereby is impounded in the hands of the administrator c. t. a. pending action, if any, taken by his judgment lien creditors within 15 days herefrom, and (d) that the payment by the administrator c. t. a. of the sum of $450.24, heretofore awarded to Harry Kremer, to Bessie Kremer Holecz, plaintiff in judgment lien against said Harry Kremer, pursuant to attachment proceedings be and hereby is approved and ratified.

*Supplementary Decree of Distribution*

And now, January 28, 1957, attachment execution having been perfected against and in an amount far in excess of the presently distributive share of Harry Kremer in the estate of Clara Staller, deceased, it is

adjudged, ordered and decreed that the First National Bank and Trust Company of Schuylkill Haven, administrator of the estate of the said decedent, be and hereby is directed to pay the sum of $653.50 impounded in its hands by decree entered January 7, 1957, to Bessie Kremer Holecz, attachment execution creditor of the said Harry Kremer, a distributee; this supplementary decree of distribution to become absolute, as of course, upon the expiration of 15 days herefrom.