. Samuel H. Seeds and Joseph H. Hinkson, Executors of
    T. B. Bowers, deceased, *v.* Taylor C. Burk, Henry W.
    Cullis and Annie E. Parsons, Appellants, who were
    sued with Samuel McIlvain, Executor, etc., of Maggie
    McIlvain, deceased.

*Will—Power to sell—Lien—Conversion.*

A purchaser under an absolute testamentary direction to sell land is
bound to see to the payment of scheduled debts because he has notice, but
he is not bound to see to the payment of general debts, because other
means for the satisfaction of that class of claims are provided by statute.
In contemplation of law conversion in such case takes place immediately
on testator's death, and claims which are not then liens on his land attach
to the proceeds as personal estate and become payable as in ordinary
course of administration. The same rule, however, does not apply where
the power of sale is discretionary only.

Testatrix by her will directed her executor to pay all of her just debts.
She then created a spendthrift trust to continue during the life of her
father, and directed the trustee and his heirs after her father's death to di-
vide and pay over the corpus of the trust estate to the remainderman.
There was no direction to sell any lands for the purpose of paying debts.
The trustee was authorized and empowered to divide the land into lots, to
improve and to sell them, and he was directed " to invest the proceeds of
every such sale or exchange in such real or personal securities or security
as " he " may deem proper and right." After testatrix's death an inventory
of her personal estate, far in excess of her debts, was filed, of which no ac-
count appears to have been filed or distribution made. *Held,* that there
was no absolute direction to sell, and that an unscheduled debt became a
lien from the date of testatrix's death.

Argued Feb. 10, 1897. Appeal, No. 598, Jan. T., 1896, by
defendants, from judgment of C. P. Delaware Co., Sept. T.,
1896, No. 74, on verdict for plaintiffs. Before STERRETT, C. J.,
GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Assumpsit on a bond. Before CLAYTON, P. J.

At the trial it appeared that Maggie McIlvain died on July 1,
1891, seized in fee of certain lands in the county of Delaware.
She made and executed a last will and testament, which was as
follows:

" I, Maggie McIlvain, of the city of Chester, county of Dela-
ware, and state of Pennsylvania, being of sound and disposing

mind, memory and understanding, do make and publish this my last will and testament, hereby revoking any wills by me at any time heretofore made.

"Item first. I direct all my just debts and funeral expenses to be fully paid by my executor hereinafter named, as soon as conveniently may be after my decease.

"Item second. All the rest, residue and remainder of my estate, real, personal and mixed of whatsoever kind and wheresoever situate, I give, devise and bequeath to my trustee hereinafter named, his heirs, executors or administrators in trust nevertheless to keep the same invested in good and safe security or securities and to receive and collect all rents, issues and profits thereof and to pay over the net proceeds thereof to my father, Samuel McIlvain, for and during the term of his natural life, free and clear of and from all liability of any past, present or future indebtedness of the said Samuel McIlvain, and so that the same shall not be in any way or manner whatsoever liable to any attachment, levy or execution of any kind, and from and after the death of the said Samuel McIlvain, to divide and pay over the corpus of the said trust estate among my brothers and sister, to wit:—Andrew McIlvain, Samuel McIlvain, Jr., William Henry McIlvain and Minnie McIlvain in equal shares, share and share alike, and in the event of the death of one or more of my said brothers or of my said sister during the lifetime of the said Samuel McIlvain, then to pay over the same share or shares of such deceased brother or sister to any child or children of the said brother or sister so deceased, such deceased brother's child or children or sister's child or children, taking such share or parts only as his or their parent or parents would have taken if living, to them, their heirs, executors, administrators and assigns forever. Respecting any portions or pieces of my real estate of which I may die seized, I do hereby authorize and empower my said trustee to improve the same by the erection of dwelling houses thereon or such other buildings as in his judgment may be for the best advantage to my said estate, and for this end, and to accomplish this purpose, I hereby authorize my said trustee to borrow money upon the security thereof and to execute and deliver good and sufficient bonds and mortgages therefor; to divide the same into such lots or parcels as in his judgment may best improve my said estate.

and to sell and dispose of all or any of the said lots with the improvements thereon, either at public or private sale or sales, and either for cash or upon ground rents, or partly for cash and partly for ground rents, at such time or times and in such parts or parcels as my said trustee may in his discretion deem proper and right, and in like manner, either at public or private sale, to sell, dispose or extinguish any, all, and every ground rent which, upon any sale of my said real estate may be reserved by my said trustee, and upon all and every such sale, I do hereby authorize and empower my said trustee to receive, take and accept such price or prices for my said real estate as may be reasonably had or gotten for the same, or any part or parcels thereof, and by proper deed, deeds, conveyances or assurances in the law, to be duly executed, acknowledged and perfected to grant, convey and assure my said real estate and every part or parcel thereof unto the purchaser or purchasers thereof in fee simple, free and clear of and from all trusts herein given or declared, and without liability on the part of any such purchaser to look after the application of the purchase money. And whenever my said trustee shall sell or exchange any of the said real estate hereby given to him, I do authorize and empower him to invest the proceeds of every such sale or exchange in such real or personal security or securities as he may deem proper and right, and to take and receive the income thereof, and to pay and appropriate the same to the same purpose and in the same names as he is hereinbefore directed with respect to the profits and income of my real estate; and should such re-investments be made by my said trustee on any unimproved real estate, then and in that event, I hereby authorize and empower my said trustee to improve and dispose of the same as in his judgment it should be desirable, and for this end to have and enjoy the same with reference to the improvement, mortgaging, exchanging and sale of the same as is conferred upon him with reference to the real estate of which I may die seized by this my will.

"And lastly. I hereby nominate, constitute and appoint my father, Samuel McIlvain, to be the sole executor and trustee of this my last will and testament.

        (Signed)          " MAGGIE McILVAIN."

Dated May 21, 1891.

On September 22, 1891, Samuel McIlvain, executor of Maggie McIlvain, deceased, granted and conveyed a part of the lands of the decedent to Taylor C. Burk, by deed, reciting the power of sale conferred upon him by her will, and the said deed was duly recorded in deed book W, No. 7, page 281. On· November 18, 1892, Samuel McIlvain, executor of Maggie McIlvain, deceased, granted and conveyed a part of the lands of the decedent to Henry W. Cullis, by deed dated November 18, 1892, reciting the power of sale conferred upon him by her will, and the said deed was duly recorded in deed book E, No. 8, page 324. On November 18, 1892, Samuel McIlvain, executor of Maggie McIlvain, deceased, granted and conveyed a part of the. land of the decedent to Annie E. Parsons, by deed, reciting the power of sale conferred upon him by her will, and the said deed was duly recorded in deed book E, No. 8, page 340.

The court reserved this point :

1. The defendants asked the court to charge the jury that the sale °and conveyances by Samuel McIlvain, executor and trustee, under the will of Maggie McIlvain, to the several terre-tenants in this case discharged the lien of the plaintiffs' claim, and a verdict should be in favor of the terre-tenant.

The court charged as follows :

The jury are directed to find a verdict for the plaintiff for $1,162.33, subject to the filing of a point reserved, that point being whether the several sales by Samuel McIlvain, executor and trustee to the terre-tenants in this case divested the lien of the plaintiffs' debts.

Verdict for plaintiffs for $1,162.33.

The court subsequently entered judgment for plaintiffs, filing the following opinion :

This was an action of debt upon a bond given by Maggie McIlvain, which was unpaid at the time of her death. She died seized and possessed of certain real estate which the plaintiffs contend, by virtue of the statute, was subject to the lien of this unscheduled debt. The lien has been regularly revived and continued according to the directions of the statute. Some of the defendants were terre-tenants by purchase from the trustee named in the decedent's will. There is no question as to the

amount due. The defendants, however, contend that by the terms of the will, her lands became converted into personalty and that, by the power of sale contained in the will, the lien of this debt was divested. The defendants rely chiefly upon the cases of Willing v. Peters, 7 Pa. 287, and Cadbury v. Duval, 10 Pa. 265. These two cases decide that a sale by an executor, either for the payment of debts or for distribution, by virtue of a positive direction in the will of the decedent, either by public or private sale, made in good faith, discharges the lien of unscheduled debts, and that the purchaser takes free from the lien of the debt and is relieved from all liability to see to the application of the purchase money. It must be conceded, under these authorities, that where the direction in the will is clear, positive and imperative to sell, either for the payment of debts, or for the purpose of distributing the estate, it works a conversion of the land into money, and unrecorded liens are discharged. Cadbury v. Duval so decides, and it does not seem to have been doubted or reversed by any subsequent case. This case, however, is certainly upon the verge, and must not be extended beyond what it decides. In that case there was no question of insolvency. The history of the case states that Mrs. Duval, the trustee, was rich at the time the sale was made. In the present case insolvency of the trustee as well as of the cestui que trust, has been hinted. It may be true that Maggie McIlvain, the daughter of the cestui que trust, was only a " man " of straw to represent her father, and that the lands she devised were in equity his property, and the intention was to cover the same from claims of his creditors, but this does not appear in the testimony, and must therefore be banished from the case.

In Cadbury v. Duval, the order in the will was positive to sell the land, and it directed that the net proceeds should be first applied to the payment of the testator's debts; secondly, that the surplus should be distributed among his children. Here was a clear and undoubted conversion by a positive direction in the will to sell. The danger to be feared from extending the principles decided in that case must be obvious to all lawyers. If an insolvent testator, having no debts of record against him, can be permitted to direct an irresponsible executor without any security to protect creditors, to sell all the testator's lands at private sale, according to his own discretion, and

thereby discharge the liens of all his debts, the purchase money could be in the trustee's pocket before the creditors would know of the sale or could come into court and demand security. In this case the terms of the trust intimate the insolvency of the trustee as well as of the executor and cestui que trust, all three being one person.

The will in the case now before us, directs, first, "Item, I direct all my just debts and funeral expenses to be fully paid by my executor." This is the only direction to the executor. There is nowhere in the will a direction to him to sell any of her lands for the purpose of the payment of her debts. As executor, therefore, no power was given to sell her land for the payment of debts or for distribution. True, she directed him to pay her debts, but under our law it was his duty to pay them from the personal estate. And where no directions are given to sell real estate for that purpose, the executor on exhausting the personal estate, must apply to the orphans' court for power to sell lands. The lands of the decedent are not assets for the payment of debts until the personal estate is exhausted. Our law has provided a simple and safe proceeding in such a case. It makes it the duty of the executor when there is no personal property to pay debts, to petition the orphans' court and to prove to the court that the decedent had left debts and not sufficient personal estate to pay them. Then, and not till then, does the land become assets for that purpose. Nor can the order of the court be carried out until adequate security has been entered.

The will in this case then proceeds to create what may be called "a spendthrift trust," devising the whole residue, including all the testator's lands, unto her executor whom she also makes her cestui que trust and trustee, with certain directions and powers, none of which order or require any of the real estate to be sold, either for the payment of debts or for distribution. Instead of ordering the property to be sold, she gives specific directions for its preservation during the life of her father. True, she directs her trustee (her father) and his heirs after her death, to divide and pay over the corpus of said trust estate to the remaindermen. The word "pay" clearly relates to the accumulated money from the estate. The word "divide" means to make partition of the remaining real estate. The

proper word, if the estate were then all personalty, would be
" to distribute " the residue, etc.

To make the case more clear let us suppose that the testator,
which would have been the more regular way, had appointed
one person as her executor, another person as trustee, and her
father, the cestui que trust of the estate. In such case we
would have four independent interests before us. First the
executor, who could have done nothing but take charge of the
personal estate, pay the debts and hand over the balance to the
trustee ; or, if there was not sufficient estate to pay the debts,
to make that matter known by petition to the orphans' court
and sell the lands for that purpose. The second person before
us would be the trustee, who could but carry out the trust and
preserve the trust estate for. the cestui que trust. The third
person interested would be the cestui que trust, who could only
see that his trustee, properly managed and preserved his estate,
and gave him the rents, issues and profits thereof, and if there
was any personal estate to see that it was safely invested. The
fourth person in interest would be the remaindermen, who
would have the right to see that their estate was not wasted.

It seems to me that the true interpretation of this will is that
it was merely a direction to her executor to pay her debts from
the personal estate ; and, as trustee, to preserve the balance of
the estate for his own use for life, and at his death, for the use
of those in remainder. The powers to sell, convert and improve
the lands or exchange them for other lands, are the usual stereo-
typed phrases in all trusts such as this appears to be.

None of the three rules which are said to work a conversion
of realty into personalty exists in this case. There is no direct
and unqualified order to sell the land. There is no necessity to
sell in order to execute the will. There is no such blending of
the personal and real estate as requires a sale in order to sepa-
rate and divide it. The rule for a new trial is, therefore, refused,
and judgment is now ordered to be entered on the verdict against
the defendants de terris.

*Errors assigned* were (1) in not affirming defendants' point ;
(2) in entering judgment for plaintiffs on the point reserved ;
(3) in not entering judgment for the terre-tenants on the point
reserved.

*W. B. Broomall*, with him *David F. Rose* and *D. M. Johnson*, for appellants.—The appellants contend that the execution of the trust under the will necessarily required the sale of the real estate in order to pay debts and ascertain the residue. The debts being unscheduled, the purchasers were not bound to see to the application of the purchase money, and therefore took their several lands discharged of the lien of the decedent's debts : Willing v. Peters, 7 Pa. 287 ; Cadbury v. Duval, 10 Pa. 265 : Grant v. Hook, 13 S. & R. 259 ; Act of February 24, 1834, sec. 13, P. L. 75.

*John B. Hinkson*, for appellees.—The power of sale given in the will did not empower the executor to sell clear of the statutory lien of decedent's debts not of record : Willing v. Peters, 7 Pa. 287 ; Cadbury v. Duval, 10 Pa. 265 ; Grant v. Hook, 13 S. & R. 259.; Allison v. Wilson, 13 S. & R. 330 ; Morrow v. Brenizer, 2 Rawle, 185 ; Neely v. Grantham, 58 Pa. 433 ; Evans's App., 63 Pa. 183 ; McClure's App., 72 Pa. 415 ; Jones v. Caldwell, 97 Pa. 42 ; Reed v. Mellor, 122 Pa. 635 ; Hunter v. Anderson, 152 Pa. 386 ; Hannum v. Spear, 1 Yeates, 553 ; Bleight v. Bank, 10 Pa. 131 ; Nagle's App., 13 Pa. 260 ; Anewalt's App., 42 Pa. 414 ; Sheridan v. Sheridan, 136 Pa. 22 ; Machemer's Est., 140 Pa. 547 ; Brolasky v. Gally, 51 Pa. 513 ; Jones v. Caldwell, 97 Pa. 45 ; Stoner v. Zimmerman, 21 Pa. 394 ; Peterson's App., 88 Pa. 397 ; Drayton's App., 61 Pa. 172.

The will did not work a conversion as of the date of the decedent's death: Page's Est., 75 Pa. 87 ; Roland v. Miller, 100 Pa. 47 ; Perot's App., 102 Pa. 235 ; Evans v. Chew, 71 Pa. 51 ; Marshall's Est., 147 Pa. 77 ; Darlington v. Darlington, 160 Pa. 70 ; Irwin v. Patchen, 164 Pa. 51.

OPINION BY MR. CHIEF JUSTICE STERRETT, May 24, 1897 :

In Cadbury v. Duval, 10 Pa. 265, it was ruled that a purchaser, under an absolute testamentary direction to sell land, was bound to see to the payment of scheduled debts because he had notice ; but that he was not bound to see to the payment of general debts because other means for the satisfaction of that class of claims were provided by statute. In contemplation of law, conversion takes place immediately on testator's death, and claims which were not then liens on his land attach to the

proceeds as personal estate and become payable as in ordinary course of administration. But it is insisted that discretionary powers of sale stand on a different footing; that because conversion takes place from the date of execution of the power, general debts have in the meantime acquired a lien on the deceased debtor's land which can only be divested in the mode provided by the statute. No case precisely in point has been cited, but analogous cases (Taylor v. Haskell, 178 Pa. 106; Drayton's Appeal, 61 Pa. 172) show and it is practically conceded, that this position is well taken. This much premised leads up to the question involved in this case, whether or not the power contained in the will of Miss McIlvain was absolute or discretionary. Analysis will certainly show that it was not absolute. There is no express direction,—peremptory in character,—that the executor shall in any and every event sell the land; and it seems just as clear that there is no necessary implication. The provision for payment of debts is no more than the law would have implied. It does not follow that sale of the land will be necessary. The personal estate is the primary fund for payment. The presumption, arising under the act of 1832 which requires an allegation of insufficiency and the exhibition of an inventory as conditions precedent to the grant of an order of sale, is that the personal estate is sufficient; and there is every reason for the application of this presumption here. There is not only no proof of insufficiency, but the allegation of the filing of an inventory of personal estate, of which no account appears to have been filed nor distribution made, far in excess of the debts, remains uncontradicted. In any event, only so much of the land as may be necessary to make up the insufficiency can be sold, and the burden is on those representing the estate to show how much, which they have failed to do. So far as appears, there was no necessity for sale even assuming the power related to payment of debts. The will shows on its face that testatrix herself had no thought of insufficiency; for the specific direction " to invest the proceeds of every such sale or exchange in such real or personal security or securities," as the trustee " may deem proper and right," excludes its use for other purposes.

Nor does the creation or form of the residuary disposition sustain the theory of absolute power. It too is what would

have been implied without a will. It embraces no more than the "surplusage" which the law sets apart to heirs and next of kin. The general expression "divide and pay," per se includes, and the context shows it was intended to include, real and personal estate. Land, as well as personalty, may be the subject of division in kind. Following the detailed direction "to pay over," which prima facie relates to personalty, there is an independent provision "respecting" real estate which clearly individualizes it, and leaves the question of its conversion solely to the trustee's discretion. The expression "authorize and empower" in itself implies discretion: Hill on Trustees, 485. If in his judgment it appears that it is not "for the best advantage" of the estate, the trustee may refuse to sell; there is no authority that can coerce him; and the land may therefore never be sold. The question of conversion lies wholly in the discretion of the trustee.

It follows from what has been said that the plaintiffs acquired a lien on their debtor's land, and that the judgment de terris entered by the court below must be affirmed.

Judgment affirmed.