## Davidson, Exrx., *v.* Bright, Appellant.

*Wills—Direction to pay debts—Power of sale — Conversion — Lien of decedent's debts—Fiduciary Act of June 7, 1917, P. L. 447, section 30.*

1. A direction "to pay all my just debts and funeral expenses" in one item of a will, and in another, an authority to the executors "to make sale of any of my real estate" do not work a conversion at the moment of the testator's death, breaking the descent and vesting the entire estate as personalty, where there is nothing in the will upon which could be predicated a positive direction to sell or a necessity to sell to execute the will, nor such a blending of real and personal property as would create a fund to devolve as personalty.

2. The mere blending of real and personal estate without a clear and indubitable intent to create a common fund and bequeath it as money will not constitute a conversion.

3. The law does not favor conversions.

4. As a general rule conversion takes place from the death of the testator where testator intended there should be a conversion, but when there is no intention to convert out and out and the power is discretionary in the executors or trustees, the land passes to the heirs at law as land.

5. At the moment of testator's death, the lien of the unscheduled debts attach, to be released only in the manner provided by law, i. e., by judicial sale, or other appropriate remedy.

6. Where there is an absolute direction to sell for the payment of debts, the purchaser is bound to see to the payment of the recorded debts, but he is not bound to see to the payment of general debts, as they become payable in the ordinary course of administration; but where the power of sale is discretionary, conversion takes place when the land is sold.

7. Section 30 of the Fiduciaries Act of June 7, 1917, P. L. 447, makes no change in the law as it previously existed with respect to the lien of general debts against a decedent's real estate where a discretionary power to sell is given as mentioned in the act.

8. It was not the intention of section 30 of the Fiduciaries Act of 1917, to change the course of devolution nor to break the current of descent by holding that a conversion took place from the moment of the testator's death, under a mere authority in the will to sell realty.

9. Section 30 of the Fiduciaries Act of 1917, did not intend to take away from general creditors the land as security for the payment of debts. It still remained such security and the lien of general debts attach thereto, but such debts will be discharged not only by judicial sale, but also by sale under the discretionary power of sale contained in the will.

10. To bring a case within this section and act, it must be clear that the statutory direction has been followed, and, as the general debts are liens, then, in a case under the act, the land having passed as land and the lien having attached, when the land is sold under the power before the expiration of the year, while the purchaser may buy free from the lien of general debts because he is not required to see to the application of the purchase money (which is merely another way of stating that he takes the land free of debt), the creditor still has a claim on the purchase money realized from the sale. If no sale is then held and the creditor is diligent and files his claim of record, it will remain as a lien under the law to be discharged when the executor exercises his discretionary power. If he does not so exercise it, the lien will still stand as a lien under the law applicable thereto.

*Statutes—Construction—Prior law — Common law — Presumption—Legislative intent.*

11. Legislative enactments are to be expounded as near to the use and reason of the prior law as may be, when this can be done without violation of its obvious meaning; for, it is not to be presumed the legislature intended to make any innovation upon the common law, further than the case absolutely requires.

Argued February 24, 1920. Appeal, No. 225, Jan. T., 1920, by defendant, from judgment of C. P. Lackawanna Co., Jan. T., 1920, No. 320, in favor of plaintiff in the case of Anna B. Davidson, executrix of Charles P. Davidson, deceased, v. William E. Bright. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Case-stated to determine marketability of realty. Before NEWCOMB, J.

In effect the action was for specific performance of an agreement for the sale of land at suit of the vendor. The agreement contained a covenant to convey in fee on or before a given date "free from all encumbrances." Within the time appointed, the executrix made tender of a deed which was refused for the reason that the executrix was without power to make good the covenant against the lien of general debts of decedent.

The facts appear by the opinion of the Supreme Court.

The court entered judgment for plaintiff. Defendant appealed.

*Error assigned* was judgment, quoting it.

*C. A. Battenberg,* for appellant, cited: Seeds v. Burk, 181 Pa. 281; Taylor v. Haskell, 178 Pa. 106; Eberly v. Koller, 209 Pa. 298.

*J. H. Price,* with him *C. B. Price* and *S. B. Price,* for appellee, cited: Duncan v. Clark, 7 Watts 217; Sleeper v. Hickey, 26 Pa. Superior Ct. 59; Cadbury v. Duval, 10 Pa. 265; Hunt's App., 105 Pa. 128; Shippen v. Clapp, 29 Pa. 265; Potts v. Breneman, 182 Pa. 295.

OPINION BY MR. JUSTICE KEPHART, May 17, 1920:

Unless we hold that a direction "to pay all my just debts and funeral expenses" in one item of a will, and in another the power "I hereby authorize my executors to make sale of any of my real estate," work a conversion at the moment of testator's death, breaking the descent and vesting the entire estate as personalty, or that section 30 of the Fiduciaries Act of 1917 controls, we are bound to reverse this judgment. The question before us arose in a very simple manner. The executor of such a will, within a year of testator's death, made a contract to sell real estate of decedent "free from all encumbrances"; in an action to recover the purchase price, defense was made that he could not convey the land

"free from all encumbrances" because it was subject to the lien of general or unscheduled debts of testator. There were many such debts and some had been indexed in the prothonotary's office as provided by law. There were no liens, judgments or mortgages.

Equitable conversion is a fiction,—wherein money directed to be employed in the purchase of land is treated as land, and land directed to be sold is treated as money,—created to sustain and carry out the intention of the testator or parties; and, for certain purposes of devolution and transfer, it is sometimes necessary to regard the property in its changed condition, although the change has not absolutely taken place. As to the circumstances under which conversion will take place, and the legal principles governing, we need but refer to the opinion of our present Chief Justice in Cooper's Est., 206 Pa. 628, 630, 631, wherein is collected, in brief epigrammatic style, the leading cases on the subject: "If, as was said in Hunt's and Lehman's Appeals, 105 Pa. 128, and subsequently repeated in Irwin et al. v. Patchen et al., 164 Pa. 51, anything ought to be settled by this time, it is that, in order to work a conversion of a testator's land into money from the time of his death, there must be either, '1st. A positive direction to sell, or, 2d. An absolute necessity to sell in order to execute the will; or 3d. Such a blending of real and personal estate by the testator in his will, as to clearly show that he intended to create a fund out of both real and personal estate, and to bequeath the said fund as money.' 'The direction to sell must be absolute and unconditional': Stoner v. Zimmerman, 21 Pa. 394. 'To establish a conversion, the will must direct it absolutely, or out and out, irrespective of all contingencies': Anewalt's App., 42 Pa. 414; and, 'unless there be an imperative direction to sell, irrespective of contingencies and independent of discretion, conversion will not take place until the sale is actually made: Anewalt's App., 6 Wright 414; Henry v. McCloskey, 9 Watts 145'; Peterson's

App., 88 Pa. 397. 'It must not rest in the discretion of the executor, nor depend upon contingencies': Jones v. Caldwell, 97 Pa. 42. 'It must be imperative, not contingent or discretionary merely, or a conversion does not take place until the sale is actually made': Mellon v. Reed, 123 Pa. 1.''

Tested by this language, we find nothing in this will upon which could be predicated a positive direction to sell or a necessity to sell to execute the will, nor such blending of real and personal property as would create a fund to devolute as personalty.

The law does not favor conversions and it is not to be regarded as a formal rule of law without regard to its real purpose. Land should be regarded as land and personalty as personalty, and creditors advancing on the basis of either should not run the chance of being deceived. Conversions will be presumed only so far as necessary to carry out the intention of testator. Land passes as land unless there is a conversion and, where such is testator's intention, the general rule is that the conversion takes place from the death of the testator, but when there is no intention to convert out and out and the power is discretionary in the executors or trustees, the course of descent is not broken; the land is still land, the heir at law takes, he may intermeddle with the estate and collect the rents and profits thereof. In such case, by force of the law of this State (see Judge SIMPSON's opinion in Kirk v. Van Horn, 265 Pa. 549), at the moment of testator's death the lien of the unscheduled debts attach, to be released only in the manner provided by law, i. e., by judicial sale, or other appropriate remedy. It has been held that where there is an absolute direction to sell for the payment of debts, the purchaser is bound to see to the payment of the recorded debts, but he is not bound to see to the payment of general debts, as they became payable in the ordinary course of administration: Cadbury v. Duval, 10 Pa. 265; but where the power of sale is discretionary, as in

this case, conversion takes place when the land is sold. In the meantime, and from the moment of testator's death, general debts have acquired a lien which can only be continued or divested in the mode provided by statute: See Seeds v. Burk, 181 Pa. 281 at 288; Hunt's App., 105 Pa. 128; Darlington v. Darlington, 160 Pa. 65; Chamberlain's Est., 257 Pa. 113. The law has determined the status of the general debts against the land: Henszey's Est., 220 Pa. 212; or, as said in Taylor v. Haskell, 178 Pa. 111, "until the exercise of the power, ......the estate remains land." Where land is sold under a discretionary power more than two years after testator's death, his unrecorded debts have lost their lien, our present Chief Justice in Cooper's Est., supra, saying, "it was held that the limitation annexed to the lien of a debt of the decedent on his lands was not exclusively for the security of purchasers, but that heirs and devisees were equally the objects of the act's protection; and, in reannouncing this rule, there is no reason why it should not include the legatees of the proceeds of land sold after the liens of the debts of the decedent upon it had expired; for if, as owners of the unconverted land, it could not be taken from them, they ought not, in reason, to be deprived of the proceeds of it when converted into money."

The mere blending of real and personal estate without a clear and indubitable intent to create a common fund and bequeath it as money, will not constitute a conversion: Lindley's App., 102 Pa. 235; Chamberlain's Est., supra. "When it is manifest that each and every provision of the will can be carried out without a sale of the real estate and the effort is to derive an intention to convert from the fact of blending of the real and personal estate, such inference cannot be supported except as it rests on something more than a mere failure on the part of the testator to distinguish between two kinds of property in directing that his estate be divided into shares and sold and distributed": Martin v. Provident Life and Trust Co., 235 Pa. 281, 286.

Does section 30 of the Fiduciaries Act of 1917, P. L. 447, 498, as follows, "Whenever any person seized of real estate.......having.........made his last will....... wherein said executors.......are authorized to make sale of said real estate......and distribute the proceeds of such sale or sales......or hold the same in trust for any particular purpose, or for the use of any particular person or persons named in said last will and testament, the person or persons purchasing the real estate....... from the executors......under the power of sale or direction to sell......shall take title thereto free and discharged of any obligation to see to the application of the purchase money," make any change in the law as it previously existed with respect to the lien of general debts against a decedent's real estate where a discretionary power to sell is given as mentioned in the act? As we have observed, the purchaser, under an absolute direction to sell, did not need to see to the application of the proceeds, as the freehold never, in contemplation of law, reached a point that general debts had any lien on it as such. By fiction of law it was converted into money and the money thus provided, with the remainder of the estate, could be used in payment of these debts. But under a discretionary power of sale, the freehold passed to the heirs unless the will provided otherwise. The real estate security given by the lien of the general debts was not taken away, and these liens could be discharged by judicial sale, or such other method as the law provided; but they were liens against the decedent's real estate. Land had passed as land. The policy of the law for more than a hundred years has been to give, preserve and protect the lien of general debts as against land, that the creditor might have some security for the collection of his claim apart from the personal estate; the only exception being the one created by the fiction of conversion, and there the value of the land was substituted for land and the security was not in fact taken away, it still remained as a fund for the creditors.

It was not the intention of section 30 to change the course of devolution nor to break the current of descent by holding that a conversion took place from the moment of testator's death under a mere authority to sell. The section did not intend to take away from general creditors the land as security for the payment of debts. It still remained such security and the lien of general debts attached thereto, but they will be discharged not only by judicial sale, but also by sale under the discretionary power, not by a positive direction of the legislature that general debts shall not be liens, but by and through the application of the rule expressed in section 30 of the Act of 1917. But, to bring the case within this section and act, it must be clear that the statutory direction has been followed, and, as the general debts are liens, then, in a case under the act, the land having passed as land and the liens having attached, when the land is sold under the power before the expiration of the year, while the purchaser may buy free from the lien of general debts because he is not required to see to the application of the purchase money (which is merely another way of stating that he takes the land free of debt, Doran v. Piper, 164 Pa. 430,) the creditor still has a claim on the purchase money realized from the sale. If no sale is then held and the creditor is diligent and files his claim of record, it will remain as a lien under the law to be discharged when the executor exercises his discretionary power. If he does not so exercise it, the lien will still stand as a lien under the law applicable thereto. The point is, that by this interpretation of section 30, as between the vendee and all others, he need not see to the application of the purchase money by the executor and takes the land discharged of the lien of general debts; but as between the creditor and the estate, the former is not deprived of his right to have his debt paid out of the land of the testator, or its value, if there is no other property with which it pay the debt. The legislature did not intend generally to remove from

creditors the security given to them under the operation of the law recently discussed by Judge SIMPSON in the case mentioned above, and section 30 applies only so far as its language is made the basis of a last will and testament. If we were to hold that, under a discretionary power, the conversion for all purposes related back from the day of sale to the date of the testator's death, then the general debts would at no time be a lien against the real estate. We are bound to regard, for it has been so abundantly decided, that under a mere discretionary power of sale, land descends as land and there is no conversion, no fiction of the law. We may suppose a case wherein A dies, leaving a will, as herein discussed with land worth $10,000, no personal property, and general debts of $5,000. Before the act, these debts would be liens to be discharged only by judicial sale, or by some other mode provided by law: Seeds v. Burk, supra; and when so discharged the purchase money was substituted for the land. Whereas, now, since the passage of the Act of 1917, if the sale related back to the date of testator's death, these debts would not be liens on the real estate; yet the land has passed as land. There was no conversion, and, while all the property of the testator was liable for the testator's debts, the real estate was only liable within the year, unless the claim had been duly indexed and suit brought: Cooper's Est., supra; but if the Act of 1917 intended to wipe out the lien of general debts on real estate and another act states that such debts can be collected from funds derived from the sale of real estate, only as such debts are proceeded on in a certain way, as we have indicated, we are legislating land away from the reach of creditors when we hold that the lien act cannot be put in operation because general debts are not liens under the Act of 1917, and we close the door against recovering these debts from the real estate of the testator; except possibly as the executor might within the year petition for an order of sale for the payment of debts. To prevent such an inequi-

table conclusion, so much out of harmony with all the law, we follow Judge BELL's advice in Cadbury v. Duval, 10 Pa. 265, 270: "Legislative enactments are to be expounded as near to the use and reason of the prior law as may be, when this can be done without violation of its obvious meaning; for, say the cases, it is not to be presumed the legislature intended to make any innovation upon the common law, further than the case absolutely requires."

From an examination of the will before us, it apparently comes within the terms of section 30. Not only is there an authority to sell, but also a direction to pay debts. This is nothing less than an authority to convert into money and distribute. The will also directs the executrix to pay "to my father and mother...... jointly, and after the death of either to the survivor, the sum of Seventy-five Dollars each and every month"; the sum necessary for this purpose, if computed on an interest-bearing investment, would exceed the purchase price named in the contract of sale. The money, therefore, would be held "in trust......for the use of any person" named in the last will and testament. It follows, therefore, that the sale by the executrix would be made under a will controlled by this act. The purchaser not being required to see to the application of the proceeds of sale would take the property free of the lien of general debts: Piper v. Doran, supra; and, with the explanation here given, the judgment of the court below is affirmed.