## Lafferty's Estate

The facts appear from the following extracts from the adjudication of

SINKLER, J., Auditing Judge.—Charles Lafferty died October 10, 1885, having made his last will dated May 20, 1875, and codicils thereto dated May 7, 1877, October 19, 1880, October 18, 1881, and May 13, 1885, all duly admitted to probate October 27, 1885.

His will gives to his widow a legal life estate in the residue of his estate, and after her death creates a trust estate for his children for life, with elaborate provisions relating to the trust which will hereafter be recited. Numerous accounts have been filed by the trustees during the continuance of

the trust, and a number of decisions have been rendered both by this court and by the appellate courts of this state construing certain clauses of the will.

Testator's widow died June 10, 1888, and the life estate given to her thereupon terminated and the trust estate created by subsequent provisions of his will came into existence.

On February 3, 1930, the last surviving child of the testator died and the trust thereupon terminated. The auditing judge has now to determine those who are entitled to share in the distribution of the corpus of the trust estate, both under the terms of the will and by virtue of sundry assignments and attachments.

Looking more closely at the provisions of the will, it is seen that by the first paragraph certain real estate is specifically devised to a daughter of the testator. By the second paragraph an annuity of $200 is given to a niece of the testator. By the third paragraph the residue of his estate is given to his wife for life or until her remarriage, with a provision as to her remarriage, which need not be recited by reason of the fact that she did not remarry.

Paragraph four creates a trust of certain real estate for the education and support of a grandson of the testator, which need not be recited as it does not come before me for construction.

By the fifth paragraph of the will, on the death of his wife, the testator gives to his executors the residue of his estate, with minor exceptions which need not be noted, to have and to hold during the life of his children thereinafter named, "and the life of the survivor of them and thenceforth until my youngest grandchild living at the decease of my surviving child shall arrive at lawful age," in trust to pay to his children, whom he named, annuities of $2000 each, and should the income not suffice to pay the annuities in full, they are to abate pro rata, and if the income exceeds the aggregate amount of such annuities, they are to be increased accordingly.

Paragraph five then continues that the annuitants shall have no power of assignment or anticipation, and that such annuitants [annuities] shall not be liable to the debts, contracts or engagements of the annuitants, with further provisions not necessary to recite.

Paragraph six provides that upon the death of any one or more of his children without issue, the share of such child shall be held as part of the original trust for the increase of the annuities of the surviving children and of the issue of any then deceased, subject to the restrictions, limitations as to assignments and anticipation, and exemption from contracts and debts and liabilities for executions and attachments, and with further provisions not necessary to recite.

Paragraph seven gives to any of his children who shall die leaving issue at his or her death a power to dispose by will of such share of the residuary estate, original or accrued, of which, under the terms of the will, he or she was at his or her death entitled to the income, to and among his or her child, children or issue, in such shares, proportions and estates absolutely or upon trusts as he or she may will and appoint, but subject to the trusts of the will during the time limited for the same to endure and the limitations over to the surviving children or the issue of deceased children, that is, "during such trust the annuities shall be subject to the disposal of my children as aforesaid and the share of the residuary estate to take effect in possession at the expiration of the trust."

Paragraph eight provides that should any of his children die leaving issue him or her surviving and without having exercised the power of appointment, then the executors shall hold the share he or she might have so appointed, "in

trust for the child, children or issue of such decedent or decedents living at his, her or their death, and the issue of any deceased child or descendant, in equal shares, so, however, that such issue or descendants shall take equally only the proportions that their deceased parent would have taken if then living," subject to the trust created by the will, until the limitation thereof shall expire, and subject to the restrictions as to liability to contracts and debts and exemptions from executions and attachments, and subject further to the limitation over in case of all the issue of any of his children dying in their minority without issue.

Paragraph nine provides that if the share of any of his children shall not vest absolutely until after the limitation of the trust shall expire by reason of any unexpired minority of issue to whom limitations have been made, but contingent until their minority, and the contingency should happen after the expiration of the trust, whereby such share or shares shall go over to the issue of others of his children, such issue shall take such accruing share absolutely according to the foregoing limitations to them of original shares by the provisions of the wills of his respective children as to original shares which they are in like manner authorized to make of contingent shares.

Paragraph ten authorizes his children to appoint out of their respective annuities by will a sum not exceeding $600 a year in favor of any surviving husband or wife.

Paragraph eleven provides as follows:

"I authorize and empower my Executors and Trustees, for the time being, whenever they consider it for the advantage of my said residuary Estate, to sell any part or parts thereof, which may be less productive than the price for which it may be sold; and to convey the same to the purchasers in fee simple, with or without the reservation of redeemable ground rents and partly on credit, with security by Bond and Mortgage, but without obligation on the part of purchasers to see to the application of the purchase moneys; and any such ground rents to release and extinguish, discharged of any trust."

The provisions of paragraph twelve need not be recited, as this paragraph is not the subject of construction by the auditing judge.

Paragraph thirteen provides as follows:

"When the said trust shall terminate by the limitation aforesaid, and the issue of my children shall become entitled to their shares absolutely, the Executors and Trustees for the time being shall forthwith settle their accounts in the Orphans' Court and make division of the effects in their hands, according to the rights of the parties in interest, under the decree of said Court."

Paragraphs fourteen and fifteen need not be recited, since they are not the subject of present construction.

Paragraph sixteen appoints the executors.

The provisions of the four codicils need not be recited, since they are not the subject of present construction.

The trust having terminated, the following facts are presented to me as to the children and other descendants of the testator: . . .

Francis Lafferty, another child of the testator, died May 14, 1896, testate, but making no reference in his will to the power of appointment given to him under his father's will. He devised and bequeathed the residue of his property to his three children, share and share alike. The litigation as to the estate which vested in the issue of said Francis Lafferty, which has been before this court and the appellate courts, will be discussed hereafter, and the distribution of the share pertaining to Francis Lafferty is one of the matters now for considera-

tion. He left to survive him three children, one of whom, Frank J. Lafferty, died April 5, 1898, intestate, unmarried and without issue, and whose share lapsed; Charles B. Lafferty, who died December 4, 1923, who bequeathed his residuary estate, one-fourth to his uncle, Charles H. Lafferty, one-fourth to his nephew, Edward L. Carr, and the latter's niece, Rose M. Riley, in equal shares, one-fourth to the children of his deceased uncle, Patrick Lafferty, and the issue of any deceased children of the said Patrick Lafferty, and one-fourth to the children of his deceased aunt, Mary Kerr, and the issue of any deceased children of said aunt. The third child of Francis Lafferty is Rose E. Carr, who died testate on December 26, 1901, giving the residue of her estate as follows: One-third of her personal estate to her husband, Edward W. Carr, absolutely, and one-third of the rents of her real estate unto him for life, and the remainder of her residuary estate to the Philadelphia Trust and Safe Deposit Company as trustee, to pay the income to be derived therefrom in equal parts to her two children during life, and upon the decease of either she bequeathed one-half of the principal unto his or her children then living and the issue of deceased children per stirpes, absolutely. She left to survive her Edward W. Carr, her husband, who died March 16, 1925, leaving a will, whereby he gave his entire estate to his second wife, Katherine A. Carr, absolutely, and two minor children, Edward L. Carr and Sarah M. Carr, afterwards Riley. The latter died April 1, 1923, leaving a will, whereby she gave the residue and remainder of her property of which she might die seised and possessed to the Philadelphia Trust Company, to hold the same and pay over the income therefrom to her daughter, Rosemary Frances Riley, during the term of her natural life. Sarah May Carr Riley was survived by only one child, Rosemary Frances Riley, of whose estate John J. Gartland is guardian by appointment of this court on April 4, 1930. . . .

The first question to be determined by the auditing judge is as to those in whom the principal of the trust estate now vests.

A number of decisions have been rendered upon the audit of earlier accounts filed by the trustees, which have determined the parties who are entitled to the income derived from the share of certain children of the testator upon the decease of such children. The first of these decisions arose from the death of Francis Lafferty, a son of the testator, in 1896.

By his will he gave his estate to his three children, Charles B. Lafferty, Frank Lafferty and Rose E. Carr. Frank died intestate, unmarried and without issue. Rose E. Carr died in 1901, and by her will bequeathed her estate to the Philadelphia Trust Company as executor for the purposes hereinabove recited. Upon the audit of an account filed by the trustees of Charles Lafferty's estate, her share of the income was awarded to the guardian of her minor children. Exceptions were sustained in an opinion by Penrose, J. [12 Dist. R. 281], wherein it was held that her share of the income was payable to her executor. He said: "Under the will of her father, exercising the power of appointment given to him by the will of his father—the present testator—she acquired the absolute ownership of the share appointed to her, though possession of the legal estate cannot be had until the termination of the trust created by the grandfather's will."

On appeal to the Supreme Court, the decision of Judge Penrose was sustained in a per curiam opinion: 209 Pa. 44.

Six years later another trustees' account was filed and an adjudication was filed thereon by Lamorelle, J. Exceptions were dismissed in an opinion by Anderson, J., April 30, 1910 [19 Dist. R. 504]. In the course of his opinion he pointed out that Judge Penrose had evidently taken for granted that the power of appointment given in the will of Charles Lafferty was a general one, and that being such, its exercise was to be presumed under the Act of June 4, 1879,

P. L. 88. He continued that the auditing judge properly followed decisions of this court which intervened between the earlier decision in Lafferty's Estate and the audit, and awarded the share of income pertaining to Rose E. Carr to those who would have taken in default of her father having exercised the power of appointment.

Judge Penrose was still living when this decision was rendered, and must have concurred in this decision. It is recited in the opinion that he had been mistaken in thinking that the power of appointment was a general one, and that he had unintentionally misled the Supreme Court. It will be observed that under this decision the income was awarded to the guardian of the minor children of Rose Lafferty, just as Judge Ashman had originally awarded it in the earlier adjudication. On appeal to the Supreme Court, in an opinion by Justice Potter, reported in 230 Pa. 496, the decree was reversed in so far as it awarded the income to the guardian of the minor children of Rose E. Carr, and it was ordered that the income be awarded to the executor under the will of Rose E. Carr. The Supreme Court said: "The decision in Lafferty's Estate, 209 Pa. 44, became the law of the case and stands as such. It must be accepted as a final adjudication of the question involved."

The decisions just referred to involve, it will be seen, construction of paragraph seven of the will, which gave to the children of the testator a special power of appointment. Subsequently paragraph eight was construed upon the death of Patrick Lafferty, another son of the testator, who died testate, but without exercising his power of appointment, and leaving to survive him six children. The question of distribution arose in connection with the share of Francis P. Lafferty, a son of Patrick and a grandson of the testator, who died testate after the death of his father, and bequeathed his estate to his wife and child. By adjudication, the auditing judge awarded the income pertaining to Francis P. Lafferty to his only child, Margaret Frances Lafferty, as sole representative of her father's line of descent from his father. The majority of this court in banc sustained exceptions to the adjudication and awarded this share of the income to Francis P. Lafferty's widow and daughter, in accordance with the provisions of his will. The opinion of Gest, J. [23 Dist. R. 327], held that on the death of Patrick Lafferty his children, among whom was Francis P. Lafferty, became entitled to Patrick Lafferty's share of the estate, and that until the termination of the trust Francis P. Lafferty was entitled to a vested interest in the income, which passed under his will, and, consequently, his share of the income was distributable in accordance with the provisions of his will. He proceeds: "What is the share he or she might have appointed appears by reference to the preceding paragraph—the seventh—to be the share of which he or she was at his or her death entitled to the income. That is, a certain share of the principal or corpus is distinctly directed to be held in trust 'for the child, children or issue of each decedent or decedents living at his, her or their deaths.' That the death of each child fixes the time at which his child, children or issue were to be ascertained and take seems to be clear. . . ." This decision was sustained by the Superior Court in an opinion by Rice, P. J., reported in 59 Pa. Superior Ct. 24, 36. His opinion recites that the conclusion reached by the majority of the orphans' court was that on the death of Patrick Lafferty ( a son of the testator) his children, among whom was Francis P. Lafferty, became entitled to Patrick Lafferty's share of the estate, and, therefore, Francis P. Lafferty had a vested interest in the income to accrue under the trust. He quotes from the opinion of Judge Gest: "The object of the eighth clause was to provide in case such appointment was not made by will (which might or might not be preferential as the testator might determine), that the share of the child so dying should at once

vest in his children or issue equally and per stirpes as they were ascertained at his death, and not to provide for an entirely different and fluctuating distribution of income until the termination of the trust, and for distribution of the principal at that time among a class which, until the arrival of that time, would be entirely contingent."

Judge Gest in his opinion upon the exceptions referred to the decisions of this court and of the Supreme Court concerning the share pertaining to Francis Lafferty, and he pointed out that Francis Lafferty's share passed to his children, either through the exercise of the power of appointment under clause seven of Charles Lafferty's will, or it passed to them directly in default of such exercise under clause eight. With this conclusion I agree, and incline to the view that the decision of Judge Anderson, which was reversed by the Supreme Court as reported in 230 Pa. 496, should have been reversed on the ground not only that the law in the case had already been established, but also because Francis Lafferty's share would have vested in his children by virtue of clause eight of the will if the power of appointment were not properly exercised.

Mr. Donoghue, representing Edward L. Carr, son of Rose E. Carr, has contended with much ability that the respective shares of the corpus all vest upon the termination of the trust and not upon the death of each of the testator's children. In support of his contention, he argues that the will shows plainly that the testator intended that the estate should be kept within his blood, according to the general scheme of his will. His argument has failed to convince me that the construction heretofore placed upon the will is not correct, to wit, that upon the death of each child there vested in the issue of such child, whether by virtue of the exercise of the power of appointment or in default thereof, an absolute estate, the enjoyment of which was postponed until the termination of the trust. Nor has he convinced me that this court is competent to decide the question otherwise than in accordance with the decisions heretofore rendered in this estate.

The law of this case is as follows: Upon a valid exercise by a child of the testator of the power of appointment given by paragraph seven of the will, as in the case of Charles H. Lafferty in favor of his five children, each of them acquired absolute ownership of the share so appointed, although possession of the legal estate was postponed until the termination of the trust. In default of exercise of the power of appointment, as in the case of Patrick Lafferty, each of his children acquired absolute ownership of his or her proportionate part of the father's share under the terms of paragraph eight, subject to like postponement of possession. In the case of Francis Lafferty, by virtue of the decision rendered by Judge Penrose, and affirmed in 209 Pa. 44, and 230 Pa. 496, Rose E. Carr and Charles B. Lafferty each acquired absolute ownership of one-half of the share of their father, Francis Lafferty, also subject to like postponement of possession, and the same estate would have vested in them under the provisions of clause eight of the will had the power of appointment been found to have been improperly exercised.

The decisions referred to relate only to the distribution of income. Judge Gest concluded his opinion with a paragraph to the effect that the scope of his decree is limited to the distribution of income only, and that the rights of the parties who might be entitled ultimately to the principal of the estate are not thereby determined. But in order to fix the distribution of such income it was necessary to determine the quality of the estate acquired by the grandchildren of the testator in each of the two cases, that is to say, the source whence the income came. In each case the nature of the estate which vested in the testator's children has been definitely and explicitly determined. Independently of such decisions, I am of the opinion that the children of Francis and Pat-

rick, upon the death of their respective parents, acquired absolute ownership of the shares which passed to them by the exercise of the power of appointment in the one case, and in default thereof in the other, possession in each case being postponed until the termination of the trust estate.

The decisions already rendered would be of no effect if the distribution of the principal arose from some other clause in the will not heretofore construed by our courts.

This leads to a construction of paragraph thirteen. My interpretation of this paragraph is that the opening phrase, as follows, "When the said trust shall terminate by the limitation aforesaid, and the issue of my children shall become entitled to their shares absolutely," is merely a recital of what the testator had already set forth in his will. While the fifth paragraph of the will fixes the time during which the trust estate shall continue, there is no provision therein as to the distribution of the principal. The phrase is construed thus: "When the trust estate shall terminate by the limitation aforesaid, and [when] the issue of my children shall become entitled to their shares absolutely [as hereinbefore set forth]." This construction is in accordance with the general canon of interpretation that the intention of the testator must be taken from all the provisions of the will. The terms of paragraph seven of the will are effective as to the distribution of the principal in the event of proper exercise of the power of appointment, and paragraph eight in default of such exercise. The words in the thirteenth paragraph of the will, "and the issue of my children shall become entitled to their shares absolutely," are no more than words of recital and have no effect as to the disposal of the principal.

Having determined the nature of the estate which vested in the grandchildren of the testator, certain other questions are to be decided.

Rose E. Lafferty, one of the daughters of the testator, died November 3, 1922, intestate and without issue. In behalf of several of the distributees it has been contended that under the will of Charles Lafferty upon the death of each of the surviving children without issue, the share of such child passed to the then surviving children of the testator and the issue then surviving of children then deceased, and that as to such issue of deceased children, the shares which they acquired from such deceased child of the testator who died without issue passed directly to them and vested absolutely in them. With this contention I do not agree. The provisions of paragraph sixth of the will of Charles Lafferty have already been discussed. The wording is difficult of construction, but the interpretation which I place upon the final sentence, "and so to the same limitation over shall take effect, subject as aforesaid, if any of my children shall leave issue living at his, or her death, and such issue shall all die during their minority leaving no issue then living," is this: That there vested in those who had the remainder interest their proportionate part of the share of Rose E. Lafferty, in the same manner as vested in them their proportionate part of their parent's share. My general plan of distribution is to divide the corpus of the estate into four parts, representing shares of the four children of Charles Lafferty who died leaving issue, to wit, Patrick, Francis, Charles H. and Mary Lafferty Maginnis Kerr. . . .

As to the one-fourth pertaining to Francis Lafferty, this passed in equal shares to Rose E. Carr and Charles B. Lafferty. The share of Rose E. Carr, to wit, one-eighth, has likewise been the subject of litigation, and following the decisions heretofore rendered, I find that she had a vested remainder as to one-eighth of the principal. In my discretion, the share pertaining to Rose E. Carr may be awarded either to her executors or directly to those who are

entitled under her will. There is an account pending before this court, filed by her executors, which has never been audited. Since she died more than twenty-nine years ago, it would be proper to make the award of her share in the estate directly to those entitled under her will, except for the fact that her executors have informed me that they desire to make a claim at the audit of their account for commissions and for services rendered, and their counsel likewise desires to present a claim for professional services. For these reasons her share of the estate is awarded to her executors.

The share of Charles B. Lafferty, who died December 4, 1923, being one-eighth, is awarded to those entitled to his estate under the residuary clause of his will as hereinbefore recited. . . .

A further question arising in connection with the share of Rose E. Carr relates to the devise for life to her husband, Edward W. Carr, of one-third of the rentals of the real estate. It is contended on the one hand that under the provisions of paragraph eleven of the will of Charles Lafferty a conversion is effected, and that the estate of Edward W. Carr is, therefore, entitled to one-third of all the personalty as shown by the final account of the trustees, and not to one-third of the personalty as existing at the date of his wife's death. All of the real estate, it may observed, had been sold prior to the termination of the trust. With this contention I do not agree. The phraseology of paragraph eleven of Charles Lafferty's will authorizes and empowers his executors and trustees, whenever they consider it for the advantage of his residuary estate, to sell any part or parts thereof. The power of sale relates to "my said residuary estate," that is, both real and personal estate. The power consists of an authorization, to be exercised whenever the executors and trustees consider it to the advantage of his estate. To my mind, this constitutes a power to sell and not a direction to sell. The provision is so clear as to require no further comment. . . .

*Daniel C. Donoghue,* for Edward L. Carr, exceptant.

*William N. Trinkle* and *Frank F. Truscott,* for Katherine A. Carr, exceptant.

*Francis A. McCarron,* for John J. Gartland, guardian of Rosemary F. Riley, exceptant.

LAMORELLE, P. J., April 29, 1932.—Of the six children who survived Charles Lafferty, two died during the existence of the trust without descendants them surviving, and, under the terms and conditions of the trust, their shares went to increase the four which remained in existence. As to three of the shares, no exceptions have been filed, save and except those of the executors of Charles J. Lafferty, a deceased son, which exceptions have been withdrawn and a compromise settlement and adjustment made, as is shown by papers hereto attached, approved by the auditing judge November 18, 1931.

Therefore, the only exceptions we have to consider are those dealing with the share of Francis Lafferty, a son, who died May 14, 1896, leaving issue: Frank J. Lafferty, a son, who died April 5, 1898; Charles B. Lafferty, a son, who died December 4, 1923, and Rose E. Carr, a daughter, who died December 26, 1901.

Edward L. Carr, a son of Rose E. Carr, filed sixteen exceptions, all of which go to the auditing judge's interpretation of the will of the original Charles Lafferty. In his paper book he states the questions involved as follows:

"1. Whether, under the so-called rule of the 'law of the case,' the distribution of the principal of the Lafferty Estate by this court is controlled absolutely by the judgments in Lafferty's Estate, 209 Pa. 44 and 230 Pa. 496,

which construed the seventh item of the will and which judgments adjudicated rights to the income of the estate. (Affirmed by the learned auditing judge.)

"2. Whether the corpus of the Lafferty Estate vested in the issue of the testator at the time of the termination of the trust or whether it vested in the grandchildren of the testator. (The learned auditing judge held that the corpus of the estate vested in testator's grandchildren under the eighth item of the will.)"

We are all of opinion that the auditing judge's interpretation of the will is warranted by the language of the will. Testator's desire was first to benefit his wife, which he did by giving her practically the entire estate for life; upon her death the entire residuary estate was left in trust for six children, all of whom, as before stated, survived testator. They were to have annuities of $2000 each year and as much in excess thereof as the income justified. The next objects of testator's bounty were the children and issue of these six children. This is shown by the fact that testator provided that if any of them died without issue, their shares were to be added to the trust fund. If any died with issue, they were to take subject to the conditions of the trust. A right of appointment was also given to the children, which testator in terms limited to their issue, leaving to each child the determination of what their issue should take and under what conditions, subject, however, in all cases whether there was an appointment or not, and whether a child died without issue, that the original trust should not be terminated until after the death of the last surviving child and until the youngest grandchild living at the decease of such surviving child should arrive at lawful age.

Exceptant relies upon the thirteenth item of the will, which reads as follows:

"When the said trust shall terminate by the limitation aforesaid, and the issue of my children shall become entitled to their shares absolutely, the Executors and Trustees for the time being shall forthwith settle their accounts in the Orphans' Court and make division of the effects in their hands, according to the rights of the parties in interest, under the decree of said Court."

We interpret that as did the auditing judge, that the words "shall become entitled to their shares absolutely" mean physical possession as distinguished from a vesting. In other words, that the shares vested in the children or grandchildren, as the case may be, of the original testator on the death of his children leaving descendants, but that the physical or actual possession thereof was deferred until the time fixed by item thirteen hereinbefore quoted.

Counsel for Katherine A. Carr, executrix of the will of Edward W. Carr, husband of Rose E. Carr, and for her in her individual right, while admitting that Rose E. Carr took a vested interest on the death of her father, Francis Lafferty, contends that the will of Charles Lafferty, the original testator, properly interpreted, gave her the real estate as personal property. In other words, that the phraseology of the will showed an intention to work an equitable conversion. The auditing judge ruled against this contention, and in this ruling we are all of opinion that he was clearly correct. Those named as executors and trustees by the eleventh item of the will were authorized and empowered, whenever they considered it for the advantage of the residuary estate, to sell any part or parts thereof which might be less productive than the price for which it might be sold, and to convey the same to the purchasers in fee simple, with or without the reservation of redeemable ground rents and

partly on credit, with security by bond and mortgage, but without obligation on the part of the purchasers to see to the application of the purchase money.

By the twelfth item they were authorized and empowered to grant and convey, and to receive conveyances for the purpose of squaring lines in preparation for the sale or letting of lots; to lay out and open streets; to dedicate them to public use, or to keep them as private ways for the more advantageous sale of vacant grounds; to pay for pipes and pavements and curbings; to make advances to purchasers of lots to be secured in bonds or mortgages or in ground rents; to erect, alter and enlarge buildings 'for the improvement of the estate, etc.

All of these delegated rights are inconsistent with the theory of an equitable conversion, and none of the many authorities cited by this exceptant touch the real question at issue. On the contrary, the ruling of the Supreme Court, by Mr. Justice Kephart, in Davidson v. Bright, 267 Pa. 580, would appear to be in point.

Counsel for the guardian of the estate of Rosemary F. Riley, she being a minor and a granddaughter of Rose E. Carr, files exceptions to the ruling of the auditing judge in awarding one-eighth of the estate to the executor of the will of Rose E. Carr. Personally, that is, speaking for myself and not for the rest of the court (all of whom are in accord with the ruling of the auditing judge), I think there is much merit in this exception. Rose E. Carr died, as hereinbefore stated, December 26, 1901. There are two cases in point: Stokes's Estate, 18 Dist. R. 236—unfortunately for me, my adjudication—wherein, after a number of years and an accounting in an estate, an executor asked for an award in his favor, his argument being that he was entitled to commissions and his counsel to compensation. As auditing judge I ruled against him, and it was sustained by the late Judge Dallett in an opinion rendered December 19, 1908, wherein it was said to turn over the fund in these circumstances to the executor could serve no good purpose and would only burden the parties entitled with expense and unnecessary delay in the payment of their legacies. A similar question arose in the Estate of Frederick James, deceased, as of October Term, 1909, No. 603, wherein Stokes's Estate was cited as authority. The only reason advanced was compensation both to the accountant and his counsel, and Judge Henderson, speaking for this court, said in his opinion (not reported): "There is no merit in these exceptions . . . The auditing judge was right and for the reasons given by him." See, also, Mickelson's Estate, 13 D. & C. 686.

In the present case, the executors of the will of Rose E. Carr, deceased, contend that they should have possession of this fund and also that an agreement of compromise was intended to cover commissions and compensation on an award which the executors never received, but not to cover any possible further awards. As before stated, the auditing judge ruled that this was a matter of discretion with him as auditing judge, and the rest of my colleagues agree in his ruling.

All questions before us were argued with marked ability, and the paper books are not only unusually lengthy but elaborate all matters in controversy in great detail.

All exceptions are dismissed and the adjudication is confirmed absolutely.

STEARNE, J., did not sit.